The Evansville and Terre Haute Railroad Company *v.* Keith *et al.*

◆

No. 808.

THE EVANSVILLE AND TERRE HAUTE RAILROAD COMPANY *v.* KEITH ET AL.

COMMOM CARRIER.—*Loss of Goods.*—*When Unnecessary to Aver Want of Contributory Negligence.*—In an action against a common carrier for goods destroyed while in its possession, it is unnecessary to aver that the loss was not occasioned by plaintiff's negligence, the carrier for hire being an insurer against loss or injury from whatever cause, except only the acts of God and the public enemy.

SAME.—*Delivery, What Amounts to.*—*Complaint, Sufficiency of.*—In such case, the complaint is sufficient as showing a delivery of the goods (baled hay) intended for immediate transportation, which alleges the placing of the goods, in a condition to be carried, at the usual place of loading the same.

SAME.—*Freight Charges.*—*When Prepayment Waived.*—*Liability.*—While a common carrier is not bound to receive freight for transportation until the charges therefor have been paid, the right to prepayment may be waived, and the liability of the carrier attached in the absence of such payment.

SAME.—*Freight Charges.*—*Tender, When Unnecessary to Aver.*—In such case, where the complaint shows that the goods were tendered to, and accepted by, the carrier, and were destroyed by fire before being shipped, it is not necessary to aver that the charges for transportation were tendered.

EVIDENCE.—*Railroad.*—*Sparks.*—*Damages.*—*Scope of Inquiry.*—In an action against a railroad company, for negligently permitting sparks from its engine to be communicated to plaintiff's goods, it may be shown that other engines of the defendant, passing over the road where the property was destroyed, threw sparks, and that other fires occurred along or near the right of way, about the time the loss occurred, as tending to show the negligent habit of the officers and agents of the company.

The Evansville and Terre Haute Railroad Company *v.* Keith *et al.*

SAME.—*Railroad.*—*Spark Arrester.*—*Expert Testimony.*—In such case, it is proper for an expert witness to give his observation with reference to a certain spark-arresting device, for the purpose of showing its efficiency for the purpose intended. And there was no error in refusing to permit such witness to be contradicted by showing that fires occurred along the line of such road while such device was in use.

INSTRUCTIONS TO JURY.—*Contributory Negligence.*—*When not a Bar to Recovery.*—In an action where certain paragraphs of the complaint make a case wherein the defendant is liable regardless of any contributory negligence on part of plaintiff, it is not error to refuse an instruction making contributory negligence a bar to recovery.

Dissenting opinion by Ross, J.

From the Vigo Superior Court.

*J. E. Iglehart, E. Taylor, S. B. Davis* and *G. M. Davis,* for appellant.

*C. McNutt* and *J. G. McNutt,* for appellees.

LOTZ, J.—The appellees sued the appellant to recover for three hundred tons of hay and two warehouses, which were destroyed by fire in January and November, 1887. Their complaint was in eleven paragraphs. There was a trial by jury and a verdict and judgment for appellees in the amount of $1,965.50.

The errors assigned and discussed by counsel are the overruling of the demurrer to the amended first, the fourth and fifth paragraphs of complaint, and the motion for a new trial. All other assignments are waived by a failure to discuss them.

The amended first paragraph avers, that on and before the 17th day of January, 1887, appellees were partners, under the firm name of Keith & Bledsoe, engaged in buying, selling and shipping grain; that the appellant was a railroad corporation, operating a railroad through the town of Pimento, where appellant had a station, depot, side-track and switch, and where it received and discharged goods, farm produce, and passengers, and was a

common carrier for hire; that on January 1, 1887, plaintiffs had seventy tons of baled hay which they desired to ship over said railroad, and had a chance to buy eighty tons of baled hay additional, at a profit, provided they could procure cars to ship the same at an early day; that previous to said date appellant had not furnished appellees with sufficient cars to carry hay, and the latter had been compelled to refuse hay, or, after purchasing it, to allow it to lie exposed in the open weather, on account of appellant failing to furnish sufficient cars; that at this time, under these circumstances, appellees wrote to appellant a letter, complaining about discriminations and asking for information, and notifying appellant of the offer which appellees had to buy eighty tons of hay, to which the general freight agent answered as follows:

"EVANSVILLE, IND., January 4, 1887.

*"Keith and Bledsoe, Pimento, Ind.:*

"DEAR SIR—I am advised this morning by our general manager that he will be able to supply all hay and other cars required at once. I think you can safely rely on a full supply of cars as needed henceforth.

"Yours truly,  G. J. GRAMMER."

That relying and acting upon said undertaking, obligation and contract, appellees purchased the said eighty tons of baled hay, and one hundred and fifty tons additional, and placed the hay so purchased, as well as the seventy tons already on hand, at a point adjacent and contiguous to appellant's side-track at the town of Pimento, at the usual and customary place of loading hay into appellant's freight cars at the said town and station; that the hay was properly packed and baled; that appellees notified appellant that the hay had been placed at the usual and customary place of loading at said town and station, and demanded cars upon which to ship the same, and requested appellant to transport said hay; that

appellees were ready and willing to pay appellant its reasonable charges for said transportation; that appellant wrongfully failed and refused to carry said hay, and wrongfully refused to furnish sufficient cars to transport the same within a reasonable time after said demand; that afterwards said hay was, at the said place, wholly and totally destroyed by fire, to the damage of appellees in the sum of $3,000.

The objections urged against the sufficiency of this paragraph are (1) that it does not show that the loss was not occasioned by the negligence of the plaintiffs, and (2) that it does not show the actual delivery of the property to, and placing it in the custody of, the defendant, and (3) that it does not allege that the plaintiffs had tendered the price of carriage, or were ready to pay the same under proper circumstances.

Whether the letters referred to in this paragraph constitute a contract for the transportation of hay, is a matter of some doubt. *Chicago, etc., R. R. Co.* v. *Dane*, 43 N. Y. 240; *Riggins* v. *Missouri River, etc., R. R. Co.*, 73 Mo. 598; *Tilley* v. *County of Cook*, 103 U. S. 155.

They may be treated simply as a request for cars, and an offer to comply therewith. In either event, the paragraph proceeds upon the theory that the appellant is liable as a common carrier, for the loss of the hay by fire. A common carrier of goods for hire is an insurer against loss or injury from whatever cause arising, except only acts of God and the public enemy. *Walpole* v. *Bridges*, 5 Blackf. 222; *Pittsburgh, etc., R. W. Co.* v. *Hollowell*, 65 Ind. 188.

The loss of the goods and the manner in which it occurred are sufficiently averred. In order to invoke the liability which the law imposes upon a common carrier, the goods or articles designed for transportation must be actually delivered to the carrier. When goods are de-

signed for immediate transportation, the placing of the goods in a condition to be carried, at the usual place of loading, and in pursuance of the usage of the parties, constitutes a delivery. *Louisville, etc., R. W. Co.* v. *Flanagan,* 113 Ind. 488; *Louisville, etc., R. W. Co.* v. *Godman,* 104 Ind. 490; *Merriam* v. *Hartford, etc., R. R. Co.,* 20 Conn. 360.

Such deposit made under such circumstances constitutes a delivery, although made without notice, and although the superintendent of the railroad did not know of the usage which the local agent had permitted to grow up, contrary to the positive order of the management. *Montgomery, etc., R. W. Co.* v. *Kolb,* 18 Am. and Eng. R. R. Cases, 512.

The paragraph is sufficient in this respect.

A railroad company, like any other common carrier, has the right to demand that its charges for transporting the goods shall be paid in advance. It is not obliged to receive them unless such charges are paid. Section 3925, R. S. 1881; *Randall* v. *Richmond, etc., R. R. Co.,* 108 N. C. 612; 3 Woods Railway Law, section 428; *Bastard* v. *Bastard,* 2 Show. 82; 2 Redfield Railway Law, section 176.

As the general custom is to receive and collect the freight upon delivery to the consignee, the right to prepayment is waived, and the carrier can rely only upon its lien or responsibility of the consignee, if it accepts the goods without prepayment. 3 Woods' Railway Law, section 428; *Pittsburgh, etc., R. W. Co.* v. *Morton,* 61 Ind. 539; *Pittsburgh, etc., R. W. Co.* v. *Hollowell, supra; Bastard* v. *Bastard, supra; Barnes* v. *Marshall,* 18 Q. B. *785; *Pickford* v. *Grand Junction R. W. Co.,* 8 M. and W. 372.

We think the paragraph sufficient.

Appellant's counsel say that the fourth and fifth paragraphs of complaint are defective because it is not

averred that the charges for transportation were tendered, and that it is not averred that the fire occurred without the fault of the plaintiff.

Each of these paragraphs proceeds upon the theory of a liability arising against the defendant as a common carrier of goods. Each shows that the goods were tendered to, and accepted by, the appellants, to be transported, and were destroyed by fire before being shipped from the station. No such averments as contended for are necessary.

On the trial, the court permitted appellant Bledsoe and many other witnesses to testify that all the engines of the defendant passing the station where appellee's property was situated threw sparks, and that other fires had occurred along or near the right of way of the railroad, about the time the loss occurred.

The correctness of a ruling on the admission or exclusion of evidence depends, in a large measure, upon the issues, and the other evidence then in hand. Some of the paragraphs of the complaint proceed upon the theory of negligence, in that the appellant's engines were improperly constructed, did not have sufficient and proper spark arresters, and were run at a high and unnecessary rate of speed, etc.

It appears that there were two fires; one on January 17th, 1887, and one on November 5th, 1887, both of which destroyed buildings and hay. Appellees sought to show that the first fire was caused by an engine attached to a passenger train going north, and that the second fire was caused by an engine attached to a freight train going north. It was in this condition of the evidence, and while giving their evidence in chief, that appellees offered the evidence of which complaint is made. Appellant contends that the engines which it was sought to show produced the fires, were sufficiently identified;

that the proof of the defective construction and of the throwing of sparks should have been confined to such engines, and that it was error to permit the appellee to give evidence of the faulty construction of, and of the throwing sparks by, other engines. In support of this position, the following cases are cited: *Gibbons* v. *Wisconsin Valley R. R. Co.*, 58 Wis. 335; *Allard* v. *Chicago, etc., R. W. Co.*, 40 N. W. Rep. 685; *Phelps* v. *Conant*, 30 Vt. 277; *Baltimore, etc., R. R. Co.* v. *Woodruff*, 4 Md. 242; *Boyce* v. *Cheshire R. R.*, 42 N. H. 97; *Warner* v. *New York, etc., R. R. Co.*, 44 N. Y. 465 (472); *Robinson* v. *Fitchburgh, etc., R. R. Co.*, 7 Gray (Mass.), 92; *Sherman* v. *Kortright*, 52 Barb. 267; *Jacques* v. *Bridgeport, etc., R. R. Co.*, 41 Conn. 61; *Bailey* v. *Trumbull*, 31 Conn. 581.

Some of these cases seem to support appellant's contention. Their application, however, depends upon whether or not the engines had been identified when the testimony was offered. When this evidence was offered, the appellant had not yet identified the engines by their number. Nor was the objection based upon the ground that the engines had been identified. We are of the opinion that the mere fact that an engine was attached to a certain train on a certain occasion does not constitute a specific identification of the engine.

The train is sufficiently identified, but not its constituent parts. The same engine may have been used to move many different trains over the road. It is a difficult matter to identify a passing engine moving rapidly, particularly so after dark, as it appears from the conceded facts was the case here.

It was said by Valentine, J., in *Atchison, etc., R. R. Co.* v. *Stanford*, 12 Kan. 354, 15 Am. Rep. 362: "Indeed, in our opinion it would be extremely unreasonable to require a stranger to the company to do any such

thing. The engines are all alike to him. He does not know them apart. Nor does he know when any particular engine is used, or who manages it. And when it passes at the rate of fifteen or twenty miles an hour, he could not see enough of it to ever afterwards identify it.''

In *Koontz* v. *Oregon R. W. & Nav. Co.*, 23 Pac. Rep. 820, it was held that owing to the difficulty in identifying a passing engine, and for the reason that the business of operating a railroad supposes a unity of management and a similarity in the construction of engines, it is proper to admit evidence as to other and distinct fires. We think the great weight of authority is against appellant's position. *Grand Trunk R. R. Co.* v. *Richardson,* 91 U. S. 454; *Sheldon* v. *Hudson River R. R.*, 14 N. Y. 218; *Field* v. *N. Y. Central R. R.*, 32 N. Y. 339; *Pennsylvania Co.* v. *Stranahan*, 79 Pa. St. 405; *Huyett* v. *Philadelphia, etc., R. R. Co.*, 23 Pa. St. 373; *Crist* v. *Erie R. W. Co.*, 58 N. Y. 638; *Smith* v. *Old Colony, etc., R. R. Co.*, 10 R. I. 22; *Annapolis, etc., R. R. Co.* v. *Gantt*, 39 Md. 115; *Cleveland* v. *Grand Trunk R. W. Co.*, 42 Vt. 449; *Longabaugh* v. *Virginia City, etc., R. R. Co.*, 9 Nev. 271; *Missouri Pac. R. W. Co.* v. *Kincaid*, 11 Am. and Eng. R. R. Cases, 83; *Diamond* v. *Northern Pacific R. R. Co.*, 13 Pac. Rep. 367; *Steele* v. *Pacific Coast R. W. Co.*, 15 Pac. Rep. 851; *Butcher* v. *Vaca Valley R. R. Co.*, 8 Pac. Rep. 174; *Norfolk, etc., R. R. Co.* v. *Bohannan*, 7 S. E. 236.

The identical question under consideration arose in *Grand Trunk R. R. Co.* v. *Richardson, supra,* and the court, by Justice Strong, said: ''The question has often been considered by the courts in this country and England; and such evidence has, we think, been generally held admissible, as tending to prove the possibility, and a consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company.'' This de-

cision on this point has been cited with approval by the Supreme Court of this State. *City of Delphi* v. *Lowery, Admx.*, 74 Ind. 520 (524).

The court refused to permit the appellant to show by a witness, C. H. Bledsoe, the number of cars furnished by it to appellees during the months of August and September, 1887, and during the months of October, November, and December, 1886. This ruling is complained of and made one of the causes for a new trial. The court, however, did permit appellant to show the number of cars which it furnished appellees during the month of October, 1887, and up to the 5th day of November of that year; and the number of cars furnished from the fourth day of January, 1887, the day when the letter requesting cars was written, until the 17th of the month, the time of the first fire.

If the cars furnished during such time were sufficient to ship the hay of appellees then on hand, this was all that could be required of it in this respect, and what cars were furnished and what shipments made on other occasions would seem to be immaterial.

It is also insisted that the trial court erred in permitting the appellees to prove that, after their barn was full, they stacked a part of their hay on the outside. It was certainly competent to show where the hay was and its condition, under some of the paragraphs of the complaint.

One James Bargly, foreman in the boiler shops of the Vandalia Railroad, was called as an expert for appellees, and testified that a device to prevent the emission of sparks, known as the extension front, was in use on the Vandalia Railroad in 1887. He also testified, over the objection of appellant, that, with proper use and handling, he had never known of a fire resulting from an engine so equipped.

Appellant's counsel say: "The law recognizes, as a question of fact, that no device has been invented to prevent the emission of sparks, and that the court so instructed the jury." If it was error to admit this testimony, then the error by appellant's own admission was corrected by the court. But we do not think it was error. The witness was only asked to give his own observation with reference to a certain device. The only effect of such statement was to show the efficiency of the device for the purposes intended. Nor was there any error in refusing to permit the appellant to contradict the statement of such witness by showing that fires had occurred along the line of the Vandalia Railroad while such device was in use. The only purpose of the witness' testimony was to show that appellant had been negligent in not providing the best appliances for arresting sparks. It was not a question of fires or no fires along the Vandalia Railroad, but whether or not the appellant had been diligent in providing the best and most improved machinery. This could not be established by showing that certain fires had occurred when a particular device was in use. Persons of experience and knowledge in the use of such appliances might give their opinions as to the utility of the various devices and which one is best adapted for the purposes designed. It would lead to a never-ending controversy, if the particular fires along the various railroads, where different devices are in use, should be arrayed against each other and the jury compelled to consider a great mass of evidence in order to ascertain which one is the best.

The last contention of appellant is that the trial court refused to give instructions Nos. 26 and 27, asked by it. No objection is pointed out as to No. 26, and No. 27 is too broad and sweeping in its terms. It is predicated upon the theory that the appellees were guilty of con-

The Evansville and Terre Haute Railroad Company *v.* Keith *et al.*

tributory negligence, and directs a verdict for appellant, regardless of the other paragraphs of the complaint. Under some of the paragraphs, the appellees may have been entitled to recover regardless of the question of negligence.

We find no reversible error in the record.

Judgment affirmed, at costs of appellant.

Filed Nov. 7, 1893.

## DISSENTING OPINION.

Ross, J.—I can not concur in the view of the majority of the court in holding that the first paragraph of the complaint "proceeds upon the theory that the appellant is liable as a common carrier for the loss of the hay by fire," and that it is good upon that theory. That part of this paragraph relative to a delivery to and acceptance by the defendant, is as follows: That the "plaintiffs purchased the said eighty tons of baled hay, and thereafter purchased one hundred and fifty tons of hay, and placed the hay so purchased, as well as the seventy tons, at a point adjacent and contiguous to the defendant's said side-track at the town of Pimento, and at the usual and customary place of loading hay into defendant's freight cars at the said town and station." Is the allegation that the plaintiffs "placed" their hay at a point adjacent and contiguous to a side-track, which was the usual and customary place for loading hay into the defendant's cars, equivalent to an allegation that the plaintiffs delivered the hay to, and it was accepted by, the defendant?

To support the reasoning of the majority in holding the complaint good upon the theory that the defendant is liable as a common carrier, it is said: "When goods are designated for immediate transportation, the placing of the goods in a condition to be carried, at the usual place

of loading, and in pursuance of the usage of the parties, constitutes a delivery." To hold that the mere placing of goods, in a condition to be carried, at the usual loading place, is a delivery to the carrier, is much broader than I ever knew the law to be. In fact, I believe the law grants to the carrier the right to choose the kind of goods which it will undertake to carry; the kind of conveyance it will use in such transportation; the time for transit, and to require the prepayment of its charges. The carrier may refuse to receive the goods offered because they are dangerous, or because they are improperly or defectively packed; because they are consigned to a point to which he does not carry; because of a blockade, a mob or an accident which prevents their being transported within a reasonable time, as well as for a want of facilities with which to transport, or a refusal on the part of the consignor to prepay the charges. To constitute a delivery to the carrier, there must be not only a tender of the thing for which transportation is asked, but an acceptance thereof by the carrier. It is the offer on the part of the one and the acceptance on the part of the other that constitutes the contract for a violation of which liability attaches. To constitute a delivery to the carrier, he must be given exclusive possession, for so long as the consignor retains possession there is no delivery. That class of goods which the consignor is to load, the carrier simply furnishing the cars in which to load them and then to transport them, are not delivered to the carrier, so as to create a liability as a common carrier for their safety and preservation, until actually put aboard the cars.

The case of *Louisville, etc., R. W. Co.* v. *Flanagan*, 113 Ind. 488, is not in conflict with the views above expressed. That case was not to recover damages for injury to goods received for transportation, but for damages

sustained by reason of the carrier's failure to receive and transport.

If, as this court says in the original opinion, that "Such deposits made under such circumstances constitutes a delivery, although made without notice," is a correct statement of the law, it would not require an acceptance by the carrier to make the delivery complete. In other words, it puts it in the power of one desiring to ship goods to make a forced delivery to a carrier without his knowledge or consent, without giving him a right to refuse to accept for any reason, thereby creating against him the liability of a common carrier.

I think the first paragraph of the complaint is insufficient upon that theory, and the demurrer thereto should have been sustained.

Again, the majority of the court hold that evidence of the condition of other engines than the one that set the fire is admissible for the purpose of showing the condition of the engine which did set the fire. I can not agree with the majority on this question. It may be conceded, for the purposes of this case, that when the origin of the fire has not been established, proof may be made of the condition of all the engines which passed the place where the fire originated, immediately preceding or about the time the fire started, and that they emitted sparks. Such evidence is admissible for the purpose of establishing the origin of the fire. But when it has been established what particular engine set the fire, it is not proper to prove that other engines set fires. The identity of the engine which set the fire, if the fire thus originated, having been established, it is proper to prove that it, both preceding and succeeding the setting of the fire complained of, set other fires or emitted an unusual number of sparks, or of an unusual size. But it can not be said, with even a semblance of justice, that evidence

of the defective condition of other engines, which it is conceded did not set the fire complained of, is admissible to prove that the engine which is presumed to have set the fire, was also defective.   In this case the evidence is uncontradicted that the engine attached to a particular train, which passed the point where the fire started just prior to the time the fire was discovered, is the one that set the fire, if it originated from an engine, and it is conceded that the engines concerning which plaintiff's witnesses testified did not set the fire.   It matters not, therefore, what the condition of other engines might have been, so long as the engine which is presumed to have set the fire is in good condition and repair, and did not emit sparks.   If evidence of the condition of other engines is admissible to prove that the engine in question is out of repair, the converse is true, and it is proper, by such evidence, to prove that it is in good condition and repair, even though the evidence may be clear and uncontradicted that it did emit sparks.   *Erie R. W. Co.* v. *Decker*, 78 Pa. St. 293;   *Gibbons* v. *Wisconsin Valley R. R. Co.*, 58 Wis. 335.

Railroad companies not only have the right, but they are compelled, to use fire to generate steam to operate their roads, but in that use they are required to use due care to prevent others from being injured thereby, and it has been long settled by an unbroken line of decisions that when the most approved spark arresters in general use on the best regulated railroads, are used, and they are kept in repair, and the engine is, properly operated and managed, the company is not liable for the escape of fire.

The fact that the fire originated from sparks emitted from an engine raises no presumption of negligence. *Sheldon* v. *Hudson River R. R. Co.*, 14 N. Y. 218; *Rood* v. *New York, etc., R. R. Co.*, 18 Barb. (N. Y.) 80; *Terry*

v. *New York Central R. R. Co.*, 22 Barb. (N. Y.) 574; *Field* v. *New York Central R. R. Co.*, 32 N. Y. 339; *Ellis* v. *Portsmouth, etc., R. R. Co.*, 2 Neb. 138; *Hull* v. *Sacramento, etc., R. R. Co.*, 14 Cal. 387; *Henry* v. *Southern Pacific R. R. Co.*, 50 Cal. 176; *Philadelphia, etc., R. R. Co.* v. *Yerger*, 73 Pa. St. 121; *Railroad Co.* v. *Yeiser*, 8 Pa. St. 366; *Kansas, etc., R. W. Co.* v, *Butts*, 7 Kans. 308; *Atchison, etc., R. R. Co.* v. *Stanford*, 12 Kans. 354; *Burroughs* v. *Housatonic R. R. Co.*, 15 Conn. 124; *Ruffner* v. *Cincinnati, etc., R. R. Co.*, 34 Ohio St. 96; *Gandy* v. *Chicago, etc., R. R. Co.*, 30 Iowa, 420; *Garrett* v. *Chicago, etc., R. W. Co.*, 36 Iowa, 121; *McCummins* v. *Chicago, etc., R. R. Co.*, 33 Iowa, 187; Redfield on Railways, section 125; Pierce on Railroads, pages 436 and 437, *Indianapolis, etc., R. R. Co.* v. *Paramore*, 31 Ind. 143; *Pittsburgh, etc., R. W. Co.* v. *Hixon*, 110 Ind. 225; *Chicago, etc., R. R. Co.* v. *Ostrander*, 116 Ind. 259.

The mere fact that fire is discovered shortly after the passage of a train raises no presumption that sparks were emitted and the fire originated therefrom. *Karsen* v. *Milwaukee, etc., R. W. Co.*, 29 Minn. 12; *Brusberg* v. *Milwaukee, etc., R. W. Co.*, 55 Wis. 106.

The evidence not only fails to establish a delivery of the hay to the defendant, but, on the contrary, shows that the defendant refused to accept it. The plaintiff himself testified that the defendant refused to accept the hay, saying that it could not get cars in which to ship the same. Without evidence to establish a delivery to the defendant, there could be no recovery under the first paragraph of the complaint.

The evidence also fails to show that the plaintiff did not contribute to his own injury, but, on the contrary, shows that knowing the danger to which his hay would be subjected if placed in close proximity to the defend-

ant's railroad, he did so place it, thereby contributing to his own injury.

As said by the Supreme Court of Wisconsin in the case of *Murphy* v. *Chicago, etc.*, *R. W. Co.*, 45 Wis. 222: "We see no reason why a man who recklessly and unnecessarily exposes his property to destruction by fire in the immediate vicinity of a railroad, which from the necessity of the case must use the dangerous element in carrying on its business, should as a general rule be protected, if by the use of ordinary care he could have avoided its destruction, any more than the man who recklessly and unnecessarily places his property upon the track, and it is thereby destroyed."

For one to place property of a highly inflammable character upon the right of way of a railroad and so near the track that fire is liable to be communicated thereto from passing engines, does not take such precautions for the preservation of his property as an ordinarily prudent man would do. Such acts are not merely evidence of negligence, but constitute negligence itself.

There could be no rightful recovery under those paragraphs of the complaint wherein it is sought to recover on account of the negligence of the defendant, for the reason that the plaintiff contributed thereto.

For the above reasons, very hastily prepared, I think the judgment should be reversed.

Filed Nov. 7, 1893.