CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY ET AL. *v.* SCHAEFER ET AL.

[No. 6,579. Filed January 14, 1910. Rehearing denied January 5, 1911. Transfer denied March 31, 1911.]

1. CARRIERS.—*Railroads.—Freight.—Failure to Follow Directions.—Liability.* — A railroad company that receives goods under contract to ship by a special route is liable as an insurer if such goods are shipped over a different route. p. 375.

2. CARRIERS.—*Connecting.—Liability.—Railroads.—Negligence.*— A connecting railroad company is liable to the owners for damages resulting in transporting their goods received from another company, regardless of negligence. pp. 376, 380.

3. CARRIERS.—*Freight.—Complaint.—Negativing Contributory Negligence.*—A complaint against railroad companies for failure safely to transport goods is not required to negative contributory negligence. p. 376.

4. CARRIERS.— *Freight.— Complaint.— Essentials.— Defenses.—* A complaint against common carriers for failure safely to transport goods which shows delivery of the goods to, and receipt by, such carriers, a failure safely to transport, and resulting damages, is sufficient; since contractural limitations of liability, and excuses for failure safely to transport, constitute defenses which must be pleaded and proved. (§3918 *et seq.* Burns 1908, Acts 1905 p. 58). pp. 376, 382.

Cleveland, etc., R. Co. v. Schaefer—47 Ind. App. 371.

5. APPEAL.—*Harmless Error.—Ruling on Paragraph of Complaint on Which Judgment Was Not Founded.*—A ruling on a paragraph of complaint on which the judgment was not founded, even if erroneous, is harmless. p. 378.

6. CARRIERS.—*Freight.—Failure Safely to Transport.—Negligence. —Evidence.*—Where no special defense is made to an action against common carriers safely to transport goods, it is not necessary for the plaintiffs to prove defendants' negligence. p. 379.

7. CARRIERS.—*Freight.—Failure Safely to Transport.—Insecure Packing.—Burden of Proof.*—In an action by shippers against railroad companies for failure safely to transport goods, the burden is upon defendants to plead and prove any excuses therefor, such as insecure packing of the goods. p. 379.

8. APPEAL.—*Weighing Evidence.*—The verdict is conclusive upon the Appellate Court, where the evidence was conflicting. p. 379.

9. CARRIERS.—*Freight.—Failure Safely to Transport.—Contractual Limitations.—Exclusion of Evidence of.*—It is proper to exclude evidence of a bill of lading in an action against railroad companies for failure safely to transport goods, where there was no answer setting out any limitation of the companies' liability. p. 379.

10. CARRIERS.—*Freight.—Failure Safely to Transport.—Verdict.— Evidence.*—The plaintiffs' failure to show which of two railroad companies, jointly sued for failure safely to transport goods, caused the damage, does not render ineffective a general verdict against both companies. p. 380.

11. CARRIERS.—*Freight.—Failure Safely to Transport.—Evidence. —Sufficiency.*—Evidence that the plaintiffs delivered to the initial railroad carrier the goods alleged to have been damaged, and that they were received at their destination in a damaged condition, supports a judgment for the plaintiffs, where no special defenses were pleaded. p. 380.

12. CARRIERS.—*Freight.—Condition, when Received.—Presumptions.—Defenses.*—The disputable presumption is that goods are in good condition when received for transportation, the burden, in an action for damages thereto, being upon defendant to plead and prove that they were not. p. 380.

13. CARRIERS.—*Connecting.—Condition of Goods Received.—Presumptions.*—In an action by the shipper against the last carrier the disputable presumption is that the goods were received in good condition by such carrier. p. 381.

14. DAMAGES.—*Excessive.—Goods Transported.*—In an action for the defendants' failure safely to transport plaintiffs' goods, the damages awarded should be the amount of the diminution of the real value, the fact that plaintiffs bought the goods at a bargain being immaterial. p. 381.

15. CARRIERS.—*Transporting Freight.—Instructions.—References to Complaint.*—The giving of instructions referring to the complaint without stating its allegations, though not commendable, does not constitute reversible error.  p. 381.

16. STATUTES.—*Remedial.—Carriers.—Actions.—Regulating Pleading and Proof.—Presumptions.—Words and Phrases.*—The act of 1905 (Acts 1905 p. 58, §3918 et seq. Burns 1908) regulating the pleading and proof in actions against common carriers for failure safely to transport goods, is remedial and should be construed with former statutes, the presumption being that it changed the common law, and that the words and phrases therein were used in their ordinary meaning.  p. 382.

17. CARRIERS.—*Initial.—Liability for Entire Carriage.—Instructions.*—The giving of an instruction that the initial carrier, unless exempted therefrom by a contract in writing, is liable for the safe carriage, for the entire route, of the goods shipped, though erroneous in restricting the exemption to a written contract, an oral one being valid, does not constitute reversible error, where no contract was offered in evidence and where the general denial only was pleaded.  p. 383.

From Huntington Circuit Court; *Milo Feightner,* Special Judge.

Action by Martin B. Schaefer and another against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company and others.  From a judgment for plaintiffs, defendants appeal.  *Affirmed.*

*Edwin P. Hammond, William V. Stuart* and *Dan W. Simms,* for appellants.

*Lesh & Lesh* and *B. H. Hurd,* for appellees.

MYERS, C. J.—Appellees, as partners, sued appellants, Cleveland, Cincinnati, Chicago and St. Louis Railway Company, referred to in the briefs as the Big Four company, which name we shall use for brevity, and the Wabash Railroad Company.  Bert J. Bartlett also was made a defendant, but the verdict and judgment were in his favor, and he is not a party here.  The complaint was in five paragraphs. Appellants have assigned errors separately; the Big Four company assigning the overruling of its separate and several demurrer to the first, second, third and fifth paragraphs of

the complaint, the Wabash company, the overruling of its separate and several demurrer to the first, second, fourth and fifth paragraphs, and each appellant, the overruling of its separate motion for a new trial.

The first paragraph, after introductory averments, alleged that on and prior to November 7, 1905, the Big Four company owned and operated a railroad from Middleton, Ohio, to Danville, Illinois, and the Wabash company owned a railroad from the latter place to Huntington, Indiana; that on that day appellees delivered to the Big Four company at Middleton, for carriage to Huntington, one soda fountain complete, the property of appellees, and directed the Big Four company to ship it to Huntington, over the roads of the Cincinnati, Hamilton and Dayton Railroad Company and the Erie Railroad Company; that the Big Four company accepted said property for carriage, and agreed carefully to transport said property to Huntington, "over the lines of said roads, as above specified," for which appellees agreed to pay, and did pay the Big Four company, $6.30; that the Big Four company caused the property to be loaded on its cars, but instead of transporting it over the lines as directed, it transported the property to Danville, Illinois, and there delivered it to the Wabash company, which transported it to Huntington, which arrangement and carriage were pursuant to a private contract between the companies, and each received a portion of the money so paid by appellees. It is alleged that the soda fountain was securely cased in a wooden box; that the address was plainly printed on the top of the box, and the character of the package was clearly indicated by the label placed on the top of the box, bearing the words "Soda Fountain;" that it is customary in packages of that kind to place the name and address of the consignee on the top of a package, which indicates the side which should be kept up in transportation; that when the package was so delivered for transportation it was in good condition, but defendants negligently and carelessly

placed the soda fountain in their car on its side, instead of properly placing it with the top of the soda fountain up, as indicated, and carelessly and negligently transported it from Middleton to Danville, and thence to Huntington; that it was lying on its side, instead of standing on its end, and was greatly damaged as a result of said handling; that upon its arrival at Huntington it was delivered to defendant Bartlett, who owned and operated a dray line from the freight house of the Wabash company in Huntington to his storage house in said city, and who, for hire from appellees, undertook to deliver it to said storage house, and did so; that Bartlett was negligent in handling the package, and when appellees received the soda fountain it was so completely ruined (describing its condition) that it was of no value; that by reason of the negligence of defendants in handling and transporting the soda fountain, as aforesaid, appellees were damaged in a certain sum, for which they prayed judgment.

As against the Big Four company, the first paragraph showed a deviation of the carrier from the instruction of the shipper, and the agreement to transport the property over certain lines of railway. It alleged damage 1. to the property while being transported by appellants, caused by their negligence. The initial carrier having deviated from its agreement to transport the property over specified lines, rendered itself liable as an insurer even against those causes of loss from which a common carrier ordinarily is exempt. "But where the carrier accepts a consignment with special instructions from the owner to forward it by a particular route, it must be sent by that route, and if it is not so sent the carrier is liable, as for a conversion, for any delay or loss of the consignment." 6 Am. and Eng. Ency. Law (2d ed.) 626.

"When the forwarding agent is instructed as to the wishes of his principal, and elects to disregard them, he is guilty of a plain breach of duty. When he sends goods in a mode

prohibited by the owner, he does it as his own risk, and incurs the liability of an insurer." *Johnson* v. *New York Cent. R. Co.* (1865), 33 N. Y. 610, 88 Am. Dec. 416. See, also, *McEwen* v. *Jeffersonville, etc., R. Co.* (1870), 33 Ind. 368, 376, 5 Am. Rep. 216; *Snow* v. *Indiana, etc., R. Co.* (1887), 109 Ind. 422, 425; *Powers* v. *Davenport* (1845), 7 Blackf. 497, 43 Am. Dec. 100; 5 Thompson, Negligence (2d ed.) §6554; *Hand* v. *Baynes* (1838), 4 Whart. (Pa.) *204, 33 Am. Dec. 54; *Goodrich* v. *Thompson* (1871), 44 N. Y. 324; *Maghee* v. *Camden, etc., Transportation Co.* (1871), 45 N. Y. 514, 6 Am. Rep. 124; 4 Elliott, Railroads (2d ed.) §§1440, 1515.

There was no joint attack upon the complaint or any of its paragraphs. The Wabash company, having accepted the goods and entered upon the transportation thereof, was responsible as a common carrier for loss occurring on its line. The allegations of negligence were superfluous, as no contractual limitation of the obligation of the carrier, the benefit of which might be lost through its negligence, was stated. In 2 Shearman & Redfield, Negligence (5th ed.) p. 874, the authors did not consider the obligations of carriers of goods as falling within the scope of that treatise, saying: "The obligations of carriers of goods are absolute; and their liability does not depend upon their being negligent." See, also, 4 Elliott, Railroads (2d ed.) §1481.

The objection urged against this paragraph, because of the absence of a denial of contributory negligence on the part of appellees, is, therefore, unimportant. *Evansville, etc., R. Co.* v. *Keith* (1893), 8 Ind. App. 57.

The second paragraph of complaint was directed against the two corporations. It was alleged that the Big Four company owned and operated a railroad from Middleton to Danville, and the Wabash company a railroad from Danville to Huntington; that on November 5, 1905, appellees delivered to the Big Four company, at Middleton, a soda fountain belonging to the appellees, for carriage and

transportation to Huntington; that the Big Four company delivered it to the Wabash company at Danville, to be carried and transported by the Wabash company to the appellees at Huntington; that both of the companies accepted and received the fountain for carriage and transportation, for which appellees agreed to pay and did pay $6.30, which consideration was divided between the companies, each receiving a portion, and each to transport the property over the line of its road; that when the fountain was delivered to said companies it was in good condition, but said companies and both of them failed to carry and transport it safely and deliver it to appellees at Huntington, but delivered it to appellees in such a broken and ruined condition that it was of no value; that by reason of the failure safely to transport and deliver it, appellees were damaged in an amount stated, etc.

By a statute in force April 15, 1905 (Acts 1905 p. 58, §3918 *et seq.* Burns 1908) it is provided, that in all actions against common carriers on account of the failure by such carriers safely to transport and deliver property received by them, it shall be sufficient for the shipper, or person entitled to maintain such action, to aver and prove, in the first instance, the delivery to and receipt by the carrier of such property for transportation to a point named, together with the failure of the carrier so to transport or deliver, and the resulting damage, and any limitation by contract of the common-law liability of such carrier is hereby made matter of defense, which shall be specifically set up by answer, and which shall not be provable under a general denial. Such affirmative answer, it is provided, shall state facts showing that the contract counted upon is based upon a sufficient consideration, that it is reasonable, that it was fairly entered into by the shipper after he had been given a *bona fide* and full opportunity to ship at a fair and reasonable rate without limitation of liability, and a reply of general denial shall be

sufficient to close the issue. The issue thus formed shall be tried as other issues of fact are tried.

The second paragraph contains all the averments required by this statute as against each appellant.

The third paragraph was sufficient under the statute as against the Big Four company. It was alleged therein that on November 7, 1905, appellees delivered to that company at Middleton, for carriage and transportation to Huntington, a soda fountain, which belonged to appellees, and directed that company to transport it and deliver it to said appellees at Huntington; that it was in good condition; that the Big Four company received and accepted it for transportation to the last-named place; that it failed safely to carry, transport and deliver it to appellees at that place; that when it delivered the property to appellees at that place, it was completely ruined; that by reason of the failure of that company safely to transport the fountain, appellees were damaged, etc.

The fourth paragraph was sufficient under the statute as against the Wabash company. After preliminary averments it was alleged that the Wabash company owned and operated a railroad from Danville to Huntington; that appellees delivered to it at Danville for carriage to Huntington a soda fountain; that it was received and accepted by that company for transportation to Huntington; that it was in good condition; that the Wabash company failed safely to carry, transport and deliver it to appellees, but delivered it to them in a broken and ruined condition; that, by reason of the failure of that company safely to transport and deliver the fountain as aforesaid, appellees were damaged, etc.

The fifth paragraph proceeded against the two companies, upon a bill of lading issued by the Big Four company. Upon the trial before a jury, of the issues made by separate answers of general denial, the bill of lading was not introduced in evidence, and during the introduction of the evidence, as shown in the bill of exceptions, ap-

pellees announced that they abandoned that paragraph of the complaint, and were asking no relief thereon. Inasmuch as the judgment cannot be said to be based upon that paragraph, it is unnecessary to consider the ruling upon the demurrer to it. On the trial, the evidence failed, as contended by appellants, to sustain the allegation of the first paragraph relating to a specific direction as to the route of transportation.

It is earnestly contended that the evidence also failed to show negligence of appellants in handling the goods. The evidence on this subject need not be critically examined. There was no requirement on the part of appellees to take the burden of showing negligence. No limitation of the common-law responsibility of the carriers, or either of them, was pleaded, and none could be proved. There could not arise, therefore, any need of proof of negligence. On which side the burden as to negligence would be in such case of limitation of liability by contract, we need not determine. So, also, if the loss was occasioned by any cause which would relieve a common carrier of goods from liability as an insurer, as that the goods were not securely packed by the shipper. The burden of such a defense was upon the carrier, and if such ground of exoneration from liability existed, it should have been pleaded by appellants. 5 Thompson, Negligence (2d ed.) §6465. There was evidence relating to the manner in which the soda fountain was packed, and if the question be regarded as properly before the jury, the burden could not be upon appellees, and the evidence being conflicting, the determination by the jury cannot be disturbed.

There was no error in the exclusion of the bill of lading, or any portion thereof, as evidence offered by appellants. It was not involved in the issues decided by the jury. If appellants desired to avail themselves of any limitation of their common-law responsibility, supposed to be contained therein, they should have made it the foun-

dation of an answer. *Chicago, etc., R. Co.* v. *Hare* (1905), 36 Ind. App. 422, cited by appellants, was a case arising before the enactment of the act of 1905.

It did not appear in evidence upon which of the two lines of railroad the damage was done to the soda fountain. It was established by the verdict that the individual defendant, Bartlett, who received it from the Wabash company, was not responsible for the injury. The failure of the evidence to show upon which road the proved loss was sustained does not render the evidence insufficient. As against the initial carrier, it was enough to allege facts sufficient to satisfy the requirements of the statute, and by the terms of the statute appellees could only be required to prove the facts which it was necessary and sufficient to plead.

In the case of *Chicago, etc., R. Co.* v. *Woodward* (1905), 164 Ind. 360 (a case decided upon the law as it existed before the enactment prescribing a rule of pleading and also of proof), it was said on page 364: "The overwhelming weight of authority now holds to the doctrine that, in the absence of statutory or charter disability, a common carrier may contract for the safe carriage and delivery of property at a destination beyond its own line, and render itself liable for loss, injury or delay on the line of another carrier, over which a part of the transportation is performed. In such instances the second becomes the agent of the first carrier."

It must be presumed, in the absence of a showing to the contrary, that the goods delivered to the carrier and accepted by it for carriage were in good order for carriage when received. If they were not so received, it is for the carrier to plead and prove that fact.

Notwithstanding the initial carrier may become responsible for the entire carriage, yet each connecting carrier is responsible as a common carrier for the injury received by the goods on its line.

As between the shipper and the last carrier it will be presumed that the goods received in good order by the initial carrier were in such order when received for carriage by the last carrier, and, therefore, nothing to the contrary being shown, that the injury occurred on the line of the last carrier. 5 Thompson, Negligence (2d ed.) §§6447, 6552 *et seq.;* Hutchinson, Carriers (2d ed.) §761; 4 Elliott, Railroads (2d ed.) §§1441, 1450.

It is claimed that the jury awarded excessive damages. The verdict was within the evidence as to the value of the soda fountain. One of the appellees went from Huntington to Middleton to purchase the fountain from a receiver in bankruptcy. If he secured a good bargain, appellants could not take advantage thereof, but were responsible for the loss measured by the diminution of its real value in transportation.

Objections are urged to various instructions to the jury. The first instruction, given at the request of appellees, referred the jury to the complaint, without setting it forth or stating its substance. We cannot commend such manner of instructing the jury upon the issues, but we are unable to determine that appellants were injured. It seems unnecessary to discuss the matter further than to refer to what we said upon the subject in the cases of *Toledo, etc., R. Co.* v. *Miller* (1909), 44 Ind. App. 227, and *Terre Haute Traction, etc., Co.* v. *Payne* (1910), 45 Ind. App. 132.

The second and third instructions, given at the request of appellees, consisted of a recital of the provisions of the statute of 1905, *supra,* and by the fourth instruction of the same series the jury were told that "no affirmative answer has been filed by either of the defendants in this case, setting up any special contract limiting the liability of the common carrier as fixed by the common law, and therefore no special contract or limitation of the common-law liability of common carriers is available as a defense." By another in-

struction the jury were sufficiently informed upon the subject of the extent of exemption of the common carrier from liability as an insurer, in the absence of limiting stipulation in the contract of carriage.

As before remarked, the fifth paragraph of complaint was withdrawn, and there was no evidence of the diversion from a prescribed route alleged in the first paragraph.

The act of 1905, *supra,* is remedial, and is to be construed with reference to the prior state of the law as declared by the courts of this jurisdiction, and is to be applied so that its intended beneficent effect may not be lost. It is to be presumed that it changes the common law, so far as the plain meaning of the statutory language requires. In the construction of all statutes of this State, unless plainly repugnant to the intent of the legislature or of the context of the same statute, words and phrases are to be taken in their ordinary sense, though technical words and phrases, having a peculiar and appropriate meaning in law, are to be understood according to their technical import. §§240, 241 Burns 1908, §§240, 241 R. S. 1881.

The statute, by its express provision, applies to "all actions against common carriers to safely transport and deliver property received by them." This case is such an action; therefore it is within the remedial purpose of the statute. By the terms of the enactment it is sufficient for the shipper, or person entitled to maintain such action, to "aver and prove," in the first instance, the delivery to and receipt by the carrier of such property "for transportation to a point named," together with the failure of the carrier so to transport or deliver, and the resulting damage.

Therefore, though there be a special contract to transport to a place named, it is sufficient for the shipper to aver in his complaint, and to prove on the trial, where there is no defense but the general denial, the delivery to and receipt by the carrier of such property "for transportation" to a point named, together with the "failure" of the carrier so to

transport or deliver, and the resulting damage. If the statute is given its intended effect, the existence or nonexistence of a special contract, to carry to a place named, will not prevent a recovery by the shipper who has pleaded and proved what is required of him by the statute. The delivery to and receipt by the carrier of the property for transportation to a point named, puts upon the carrier the common-law obligation for safe carriage, unless it be limited by contract, which limitation is a matter of defense, of which the carrier cannot avail itself under an answer of general denial.

By the sixth instruction, given as asked by appellees, the jury were told that when a common carrier accepts and contracts for transportation anything directed to a point of destination beyond the terminus of its own line, it shall be deemed thereby to assume an obligation for its safe carriage to such point of destination, unless, at the time of such acceptance, such carrier is released by a contract in writing; and where a carrier relies upon a contract to relieve it of the responsibility fixed by law in the absence of such contract, the burden is cast by law upon it to set up such contract by way of answer, and to establish the existence thereof by a preponderance of the evidence in the cause.

This instruction was erroneous, in that it required the special contract limiting the liability of the carrier to be in writing. A verbal contract is as obligatory for such purpose as a written one, unless there be a statute requiring it to be in writing, though it may be more difficult to prove it. Hutchinson, Carriers (2d ed.) §242; 4 Elliott, Railroads (2d ed.) §1503. We are not advised that there is such a statute in this State.

However, no such oral contract modifying the common-law obligation was in issue or proved or offered in evidence, and we are of the opinion that appellants suffered no injury from this instruction.

Other objections are urged by appellants in connection

with the instructions, but, in view of what we have said, it seems unnecessary to take further space.

We find no available error.   Judgment affirmed.