Argued March 14; affirmed October 7, 1930

# CARSTENS PACKING CO. *v.*
# SOUTHERN PACIFIC CO.

(292 P. 89)

*Clarence J. Young* of Portland (Ben C. Dey of Portland on the brief) for appellant.

*Arthur S. Vosburg* of Portland (Price & Geary of Portland on the brief) for the respondent.

BELT, J. This is an action to recover damages alleged to have been sustained by reason of negligent shipment of livestock. The first cause of action concerns a shipment of three carloads of livestock by plaintiff as consignor, to itself as consignee, from Orland, California, to Tacoma, Washington. The shipment was made over the lines of the Southern Pacific company as the originating carrier and the Oregon-Washington Railroad & Navigation company as the connecting and terminal carrier. Defendant is charged with negligence as follows: (1) Keeping cattle in its corrals at Orland for twelve hours prior to loading; (2) rough handling of cattle between Junction City, Oregon, and Centralia, Washington, caused by unusual jerking and stopping of the train; (3) placing livestock at end of a train of dead freight cars thereby causing unreasonable roughness in transportation. Plaintiff asserts that, by reason of such negligence, it sustained damages aggregating $640.07.

The second cause of action is based on the shipment of thirteen cars of livestock from Cottonwood, California, to Tacoma, Washington, over the lines above mentioned. The charges of negligence are the same as in the first cause of action excepting the charge of delay at shipping point. By reason of alleged negli-

gence in transportation of the livestock, plaintiff claims depreciation in their market value to his damage in the sum of $2,307.30.

On the same train there was a shipment—not involved herein—by plaintiff of eight carloads of sheep from Willows, California, a station south of Orland and Cottonwood. Relative to the charge of delay in loading livestock at Orland, plaintiff claims that it had an arrangement with the defendant through its train dispatchers at Sacramento and Dunsmuir, California, that all this livestock would move in one trainload as a special livestock shipment, and that the train would start at Willows with the sheep at 4 o'clock p. m., June 4, 1925, picking up the cattle at Orland and Cottonwood respectively, on the way north. Defendant company denies the charge of negligence based on undue delay and asserts that the cars were delivered at Orland on June 5, pursuant to a written order of the plaintiff and that the cattle were, in fact, loaded at 2:30 a. m. on that day. This order, which was introduced in evidence, is dated May 26, 1925. Plaintiff claims that the arrangement for earlier shipment was made subsequent to this written order. It is conceded that, if the cars were delivered at Orland pursuant to the written order, and there was no subsequent agreement for earlier delivery, plaintiff has no cause to complain of delay in transportation. If, however, there was an arrangement with the train dispatchers for train leaving Willows at 4 p. m., June 4, such evidence would warrant the jury in inferring unreasonable delay in transportation. Concerning this phase of the case, the issue was: What was the contract of shipment? Was it expressed in the written order dated May 26, 1925, or did the shipper have any subsequent agreement for delivery of cars?

Relative to the alleged negligence of the carrier in the rough handling of the livestock between Junction City, Oregon, and Centralia, Washington, plaintiff offered evidence that, as a result of the improper operation of the train, men riding in the caboose were thrown down, two head of livestock were killed outright, and a third head so severely injured that it died shortly after arriving at destination. There was also evidence tending to show that, by reason of such improper treatment, there was excessive shrinkage in weight of the livestock, materially affecting its market value. In opposition to this contention, the railroad company offered evidence to the effect that whatever damage, if any, the cattle sustained was due exclusively to the ordinary and reasonable hazards of travel and that the train was operated with no more jars and concussions than were reasonably necessary in the operation of a cattle train.

In reference to the allegation of negligence in that the cars containing the livestock were placed at the end of a dead freight, the carrier contends that the cars were so placed at the direction of the caretaker in charge of the livestock. It was the contention of the plaintiff that the caretaker protested against such placing of the cars.

Verdict and judgment were had in favor of the plaintiff. Defendant carrier appeals, assigning as error (1) the refusal of the trial court to allow a new trial on account of alleged prejudicial matter brought to the attention of the jury, and (2) the refusal to give certain requested instructions.

■■ We see no abuse of discretion on the part of the trial court in refusing to declare a mistrial. To appreciate this assignment of error, reference is had to the following portion of the record:

"Q. Mr. Lawrence (manager of Carstens Packing Company), referring now to the shipment of cattle on

this same train, will you state whether or not the claim for dead sheep was paid by the Oregon-Washington Railroad & Navigation company?

"A. Yes, sir.

"Mr. Young. That is objected to as being entirely improper.

"The Court. I sustain objection to that.

"Mr. Vosburg. Well, your honor, the purpose of that is if they paid for the dead sheep.

"The Court. I understand the purpose of it, but it is not proper evidence.

"Mr. Young. At this time the defendant moves for a mistrial upon the ground of improper statements by counsel.

"The Court. Yes, the jury will disregard the statement of counsel. I will sustain objection to the testimony.

"Mr. Young. Will your Honor rule upon the motion?

"The Court. The statement was made by counsel for the purpose of the testimony. I think the Court will tell the jury that it is not competent and should not be considered by them in the weighing of the evidence in the case."

Thereafter the court rejected plaintiff's offer of proof made not in the hearing of the jury, and also denied motion for mistrial.

Since only a general objection was made to the question after it was answered and there was no motion to strike the answer, we are not concerned with the admissibility of the evidence: *Derrick v. Portland Eye, etc., Hospital,* 105 Or. 90 (209 P. 344). Indeed, every ruling which the court made was in favor of the defendant. The motion for new trial was predicated—not on the question asked the witness—but upon the alleged improper statement of the counsel after court had made its ruling. In the lower court defendant was content with the general objection, but is very specific here in

pointing out reasons why such testimony is inadmissible. We think the question was asked in good faith and there is no semblance of pettifoggery.

We see no analogy between this case and those personal injury actions where counsel wilfully brings before the jury the fact that the defendant has indemnity insurance. There is nothing in the nature of this case to arouse passion and prejudice.

Assuming that there was error in questioning the witness as to payment of claim for dead sheep, the trial court was careful to instruct the jury that such evidence was not to be considered and there is nothing in the record to indicate that the jury failed to obey such instruction: *Wells v. Morrison et al.,* 121 Or. 604 (256 P. 641).

■ Defendant complains of refusal to give the following requested instructions:

## "IV.

"(a) With reference to the charge made by plaintiff that defendant was negligent in holding plaintiff's livestock in its pens at Orland for about twelve hours prior to loading, it is the contention of defendant that plaintiff ordered the cars upon which the livestock were to be transported for June 5, 1925, and that in fact the cattle were loaded upon the cars at Orland and proceeded northward therefrom on the first train leaving Orland bound northward in the early morning of June 5, 1925.

"(b) If you should believe from the evidence that plaintiff ordered the cars for June 5, 1925, but caused the livestock to be placed in defendant's pens at Orland on June 4, 1925, and if you should further believe from the evidence that the cattle proceeded northward out of Orland on the first train reasonably available and in the early morning of June 5, 1925, then, even though the cattle may have remained in the pens for a period

of twelve hours before loading at Orland, there could be no responsibility on the part of defendant for holding the cattle in the pens under these circumstances, and on this phase of the case you would have to find that defendant was not guilty of negligence.''

In our opinion it would have been error to give the above instructions for the reason that it eliminates from the consideration of the jury the question as to whether there was an agreement for transportation of cattle after the written order for cars made on May 26, 1925. Plaintiff did not dispute having made such an order for cars to be delivered for transportation of livestock on June 5, 1925, but introduced testimony of the train dispatchers of defendant railway company that the original order was modified so that the special livestock train would leave Willows at 4 p. m. June 4. In the absence of a proper requested instruction, we think the general charge of the court that it was the duty of the railway company to transport this livestock with reasonable dispatch and care is sufficient. While delay in transportation is one of the grounds of negligence charged against the defendant, the real grievance of the plaintiff was based upon the alleged rough handling of the cattle during transportation. This was the vital issue in the case.

█ █ No error was committed in refusing to give the following instruction:

''With respect to the charge that defendant was negligent in placing the livestock at the end of a train of dead freight between Albina, Oregon, and Centralia, Washington, I instruct you that if you should believe from the evidence that the cattle cars were in fact placed at the end of a train of dead freight at the request of or with the consent of plaintiff's caretaker in charge of the shipment, then defendant could not be held guilty

of negligence merely because the cars in which the live-stock was being transported were in fact placed at the end of the train of dead freight.''

It is, indeed, a strange and novel doctrine that, by reason of instructions given by a caretaker as to the manner in which the train should be operated, a common carrier may be relieved of its obligation to transport cattle with reasonable care and dispatch. The caretaker had no authority, express or implied, thus to speak for the shipper. It was his duty under ''Uniform Livestock Contract'' to ''take care of, feed, and water the live-stock while being transported.'' If the cattle were sub-jected to greater hazards by being placed at the end of a long train of freight cars with its whipcracker effect, those in charge of the operation of the train knew or ought to have known of such danger and were bound to exercise care commensurate therewith. Defendant has not cited any authority, nor have we been able to find any, based on similar facts, which supports the conten-tion that it could be thus relieved of liability for its own negligence. Cases cited, such as *Pavitt v. Lehigh Valley R. R. Co.*, 152 Pa. 302 (25 Atl. 1107), and *Upte-grove v. Central R. R. Co. of New Jersey* (16 Misc. Rep. 14, 37 N. Y. S. 659), wherein there was failure to comply with shipping instructions, are not analogous.

■ Defendant's requested instruction to the effect that plaintiff assumed the risk of any injuries to his cattle due to the ordinary jars and concussions from the starting and stopping of the train was, in our opinion, covered wherein the jury was advised that the carrier was not an insurer against accident but was liable only ''for failure to exercise that degree of care which an ordinary prudent person engaged in the railway busi-ness would exercise in carrying on the work.'' The jury

was further instructed, in effect, that if the defendant had, in fact, exercised such reasonable care in transporting the livestock, a verdict should be in its favor.

■ Instructions requested involving the alleged negligence of the shipper were properly rejected for the reason that contributory negligence of the shipper was not an issue under the pleadings. Such defense to be available must be affirmatively pleaded: *Cleveland C. C. & St. L. Ry. Co. v. Schaefer,* 47 Ind. App. 371 (90 N. E. 502) ; *San Antonio U. & G. Ry. Co. v. Storey et al.,* (Tex.) 172 S. W. 188.

■ We think the trial court properly instructed the jury that the measure of damages in case of injury to livestock is the difference in their market value in the condition in which they actually arrived at destination and what would have been their market value in the condition in which they would have arrived but for the negligence of the defendant: 10 C. J. 396; Elliott on Railroads (3d Ed.) § 2754; Sutherland on Damages (4th Ed.) § 918. We think the above rule is applicable notwithstanding the fact that the cattle were shipped for immediate slaughter and not for the purpose of resale: *New York, etc., Railroad Co. v. Estill,* 147 U. S. 591 (13 S. Ct. 444, 37 L. Ed. 292). In our opinion, this measure of damages is in keeping with the Carmack amendment applicable to interstate shipments, wherein in case of injury to goods the liability is imposed upon the carrier to make compensation ''for any loss, damage, or injury to such property'': U. S. Code Annotated, Title 49, § 20, subdivision 11. True, *New York, etc., Railroad Co. v. Estill,* supra, was decided before the Carmack amendment of 1906, but see the later case of *Muir v. Missouri K. & T. Ry. Co.,* 168 Mo. App. 542 (154 S. W. 877), decided after the passage of the above

act, wherein the federal case was cited with approval. The court, in referring to the market value rule, said:

"The above is the correct rule whether the property is shipped to market or held for some other purpose."

In the federal case it was said:

"The difference between the market value of the cattle in the condition in which they would have arrived but for the negligence of the defendant, and their market value in the condition in which, by reason of such negligence, they did arrive, constituted the proper rule of damages. It was not material whether the plaintiffs intended to keep the cattle upon their farms, for breeding purposes, or to sell them upon the market. The depreciation in value of the cattle was the same in either case."

Finding no error in the record, the judgment of the lower court is affirmed.

COSHOW, C. J., and BEAN and BROWN, JJ. concur.