CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY **v.**
JOHN H. SLATTERY.

FILED MAY 17, 1906.   No. 14,325.

1. Carriers: CARE OF STOCK. The provisions of sections 4386 and 4387, Revised Statutes of the United States, do not relieve a railway company engaged in conveying animals from one state to another from liability for damages arising through the failure to properly

49

care for, feed and water animals in their charge, the transportation of which is delayed through an act of God.

2. ———: LIABILITY. A common carrier of live stock is generally an insurer of their safe delivery to the consignee against loss or damage.

3. ———: EVIDENCE. The delivery of animals to a carrier in good order and their arrival at the place of destination in bad order makes a *prima facie* case against the carrier, and it devolves upon the carrier to show that the loss or damage resulted from some cause which would exempt it from liability.

4. ———: DUTIES. A cause for unavoidable delay in shipment affords no excuse for a failure to exercise that degree of care required of a common carrier in the transportation of stock.

5. Shipping Contract. A common carrier is not relieved from its responsibility to care for animals entrusted to it for transportation by reason of the express terms of a written contract, whereby the shipper agreed to accompany the stock, where the company, with knowledge of the failure on the part of the shipper to accompany the stock, proceeds under the shipping contract.

ERROR to the district court for Hall county: JAMES N. PAUL, JUDGE. *Affirmed.*

*J. W. Deweese* and *Frank E. Bishop,* for plaintiff in error.

*Ashton & Mayer, contra.*

JACKSON, C.

The plaintiff charges in his petition that on May 29, 1903, he delivered to the defendant 20 horses to be conveyed from South Omaha, Nebraska, to East St. Louis, Illinois; that the horses were not delivered to him at the destination until June 3, 1903, but were delayed in course of shipment almost four days longer than the time regularly required for transportation between those points; that they were not properly handled and cared for during any part of the time within which they were under the care of the defendant, and were for a period of over 56 hours without food and water, and exposed continuously to the sun and rain,

and when they were delivered they were sick, gaunt and bruised, as a result of the ill treatment complained of, and that from the effects of such treatment two of the horses died, and that the plaintiff sustained damages. The defendant admits the shipment, and avers it was by virtue of a written contract entered into at the time the shipment was agreed upon; that the stock was shipped and delivered to the consignee at the destination named, without any failure or neglect on its part; that, as a part of the consideration, the plaintiff agreed to accompany the same in order to look after and care for the comfort and necessities of the stock while *en route,* and that he would give the stock proper and reasonable attention while in transit for the purpose of feeding and unloading, when necessary; that, in violation of the contract, the plaintiff did not accompany the shipment, although free transportation was provided and he was furnished with every facility for so doing. As a further defense, it was answered that, by reason of an unprecedented flood that was then prevailing along its line of road, it was unable to transport the stock by the usual route of travel, but was obliged to divert the shipment to another route, and that there was no unnecessary delay or neglect of duty on the part of the defendant; that if the stock sustained any injury by reason of improper attention it was due to the neglect of the plaintiff, who failed to accompany the shipment. In reply, the plaintiff denied that the horses were injured through any fault or negligence on his part, and alleged that the consignment was accepted and forwarded by the defendant with knowledge on its part that no one would accompany the stock. The plaintiff had judgment in the trial court, and the defendant seeks a reversal.

The testimony on behalf of the plaintiff tends to prove that on the 28th day of May, 1903, he came into the city of South Omaha over the Union Pacific Railroad, with this car-load of horses, and that they were there delivered to the Union Stock Yards Company. He applied to the live stock agent of the defendant company to have the horses shipped

out over the defendant's line to East St. Louis, and informed the defendant's agent that he was going out that evening on the passenger train to St. Louis; that he signed a contract in blank, and also a shipping order to the Union Stock Yards Company, and thereupon left for St. Louis; that the horses were delivered to him in St. Louis on the afternoon of June 3 in a gaunt and damaged condition, some of them suffering from pneumonia, from the effects of which one died in two or three days, and another some weeks thereafter; that on the route covered by the shipment there were facilities for unloading and feeding stock at Creston, Iowa, St. Joseph, Missouri, and other points. On behalf of the defendant the evidence discloses a condition arising from an unusual storm and flood, sufficient, without question, to excuse the delay; that the shipment arrived at Monroe, Missouri, on the morning of June 1, where the horses were unloaded, fed, watered and cared for until the next day at 9 o'clock P. M., when they were reloaded and forwarded to St. Louis. The contract set out in the company's answer was put in evidence and contains this condition: "In consideration for free transportation for one person, designated by the first party (plaintiff), hereby given by said railway company, such person to accompany the stock, it is agreed that the said cars, and the said animals contained therein, are and shall be in the sole charge of such person, for the purpose of attention to and care of said animals, and that the said railway company shall not be responsible for such attention and care. * * * It is agreed that the said animals are to be loaded, unloaded, watered and fed by the owner or his agents in charge." The evidence also discloses that the shipping contract was delivered to the conductor in charge of the train at the city of South Omaha, and when he discovered that no person was aboard in charge of the stock he returned the contract to the company's agent, who forwarded it by mail, addressed to the plaintiff at East St. Louis, Illinois, where it was received by him. There is no evidence as to whether the

stock was at any time unloaded, fed and watered, between the time it left South Omaha on May 29 and the time it was unloaded at Monroe, Missouri.

On behalf of the railroad company it is claimed that the transaction was an interstate shipment and governed by federal statute. Section 4386 of the Revised Statutes of the United States provides: "No railroad company within the United States whose road forms any part of a line of road over which cattle, sheep, swine or other animals are conveyed from one state to another, * * * shall confine the same in cars * * * for a longer period than twenty-eight consecutive hours without unloading the same for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented from so unloading by storm or other accidental causes." By section 4387 it is provided: "Animals so unloaded shall be properly fed and watered during such rest by the owner or person having the custody thereof, or in case of his default in so doing, then by the railroad company * * * transporting the same at the expense of the owner or person in custody thereof; and such company, owners, or masters shall in such case have a lien upon such animals for food, care, and custody furnished, and shall not be liable for any detention of such animals." The statute also provides a penalty for the violation of these provisions. We do not understand how the defendant is aided by the provisions of the federal statute. It is true that the obligation in the first instance rests upon the owner or his agent in charge, but it attaches with equal force to the public carrier in case of default by the owner. Nor is the carrier released from its responsibility by reason of the express terms of the written contract, whereby the shipper agreed to accompany the stock, but failed to do so. Where the company, with knowledge of such failure, proceeded under the shipping contract, it would still be liable for any loss resulting from its failure to provide the stock with proper care and protection. *Chicago, B. & Q. R. Co. v. Williams*, 61 Neb. 609. The case does not fall within the rule of *Chicago, St.*

*P., M. & O. R. Co. v. Schuldt,* 66 Neb. 43, where not only was there an agreement that the shipper should accompany the stock and be responsible for its care, but he was provided with transportation for that purpose and personally accompanied the shipment, and it was held that the carrier was only required to provide proper facilities, and, when doing so, was not liable for injury arising from lack of care through the fault of the shipper himself.

Again, liability on the part of the company is denied because of the failure of the plaintiff to prove that the railroad company did not stop the shipment for feed and rest at such places as were possible; that if he claims damages on account of the failure to perform that duty the burden was upon him to show that the company failed to perform it. A carrier of live stock is an insurer of the safety of the property while in its charge for transportation. *Kinnick Bros. v. Chicago, R. I. & P. R. Co.,* 69 Ia. 665. There are, of course, exceptions to this rule,, but the delivery of live stock to a carrier in good order, and their arrival at the place of destination in bad order, makes a *prima facie* case against the carrier, and it devolves upon the carrier to show that the loss or damage resulted from some cause which would exempt it from liability. *Wabash R. Co. v. Sharp, ante,* p. 424.

But it is said that the damage was the direct result of an act of God. This conclusion, however, is not justified by the evidence. The evidence in that respect, as already stated, was sufficient to show a just cause for delay, but there is an entire absence of evidence to show that the flood in any manner interfered with the unloading of the stock, providing it with food and water, and giving it such care as would insure its delivery at the destination in good condition. A cause for unavoidable delay in shipment affords no excuse for a failure to exercise that degree of care required of a common carrier in the transportation of stock. *Kinnick Bros. v. Chicago, R. I. & P. R. Co., supra.*

The assignments of error are all covered by the general discussion of the case and will not be noticed separately.

There is no prejudicial error in the record, and we recommend that the judgment be affirmed.

ALBERT, C., concurs.

DUFFIE, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.