HENRY T. CHURCH, APPELLEE, v. CHICAGO, BURLINGTON
& QUINCY RAILWAY COMPANY, APPELLANT.

FILED MAY 7, 1908.   No. 15,167.

1. Carriers: TRANSPORTATION OF LIVE STOCK: BURDEN OF PROOF. It is
the general rule that a common carrier of live stock for hire is
an insurer of its safe delivery to the consignee, except where the
injury or loss is due to the act of God, the public enemy, or to
the inherent nature or propensities of the animals; and the de-
livery of the animals to the carrier in good condition and the
failure of the carrier to deliver them at the place of destination
makes a *prima facie* case against the carrier. The burden of proof
is on the carrier to show that the loss resulted from some cause
which would exempt it from liability.

2. Appeal: MISCONDUCT OF COUNSEL. A cause will not be reversed on
account of misconduct of counsel in addressing the jury, where
the attention of the trial court has been called to such misconduct,

and an objection thereto sustained and counsel duly admonished, unless it appears that such misconduct was of such a nature as to have been prejudicial to the rights of the adverse party notwithstanding the ruling and admonition of the court.

APPEAL from the district court for Red Willow county: ROBERT C. ORR, JUDGE. *Affirmed.*

*W. S. Morlan, Frank E. Bishop* and *Fred M. Deweese,* for appellant.

*Starr & Reeder,* contra.

GOOD, C.

In March, 1904, Henry T. Church contracted with the Chicago, Burlington & Quincy Railway Company to transport for him from McCook, Nebraska, to Menominee Falls, Wisconsin, a car-load of horses and mules. The contract of shipment did not require Church to furnish an attendant or caretaker. The horses and mules were delivered to the railway company in good condition, and when the car was received at its destination one mule was missing. Church was unable to obtain any information as to what had become of the missing mule. He brought this action against the railway company, setting up these facts, and asking for a recovery for the value of the mule. Defendant admitted its corporate existence, and denied all the other allegations of the petition. Upon a trial of the issues plaintiff had judgment, and defendant appeals.

Appellant's first contention is that the judgment is not supported by the evidence, and that a verdict should have been directed for the defendant. Upon the trial plaintiff introduced evidence tending to support all the allegations of his petition, and defendant introduced evidence tending to show that the horses and mules were unloaded near Chicago, at a station called Clyde, for feed, water and rest, and that at that time the mule in question was found dead in the car, with no evidence of external injury. The keeper of the yards at Clyde testified that the body

of the mule was badly bloated, and gave it as his opinion that the mule had been dead for 10 or 12 hours, and that it had died from colic. It does not appear that any post-mortem examination of the body was made. The evidence also tends to show that at that time the car was in sound condition, and that the other horses and mules were in good condition. It is inferable from the record that the car-load of horses and mules may have been unloaded at Creston, Iowa, where appellant maintains a yard where live stock in transit is unloaded for rest, feed and water. There is no evidence as to what care they received at Creston. Appellant contends that this state of facts requires a finding that the mule died from natural causes, or, at least, a finding that its death was not attributable to any fault or negligence on the part of the carrier. It is now the general rule that a carrier of live stock for hire is an insurer, except where injury or loss is due to the act of God, the public enemy, or to the inherent nature and propensities of the animals. This rule is modified frequently by special contract, where the shipper is required to furnish a caretaker. The rule is also recognized in many states that, where live stock is delivered to a carrier for shipment, the contract of shipment not requiring the consignor to furnish a caretaker, the burden of proof in the event of loss or damage is upon the carrier to show that the loss falls within one or more of the exceptions which would free the carrier from liability. In *Chicago, B. & Q. R. Co. v. Slattery,* 76 Neb. 721, it is held that a common carrier of live stock is generally an insurer of their safe delivery to the consignee against loss or damage, and the delivery of the animals to the carrier in good order and their arrival at the place of destination in bad order makes a *prima facie* case against the carrier, and it devolves upon the carrier to show that the loss or damage resulted from some cause which would exempt it from liability. *Chicago, R. I. & P. R. Co. v. Witty,* 32 Neb. 275. In *Coupland v. Housatonic R. Co.,* 61 Conn. 531, speaking of the carrier's liability it is said:

"While he is not an insurer against injuries arising from the nature and propensities of the live stock carried by him, yet his liability is not limited to a careful conveyance of the cars containing them. He must provide in advance suitable means to secure their conveyance, and he must use those means with all reasonable diligence and forethought in the varying circumstances arising in the business." In *South & North A. R. Co. v. Henlein & Barr,* 52 Ala. 606, 23 Am. Rep. 578, among other things, it is said: "By the common law a common carrier is absolutely liable for the safety of goods entrusted to him for transportation. Whatever loss or injury may happen, he must answer for, unless he shows it was caused by 'the act of God, or of a public enemy, or by the fault of the party complaining.' * * * When a loss or injury happens, the *onus probandi* rests on the carrier to exempt himself from liability, for the law imposes on him the obligation of safety. The owner or shipper is bound to prove no more than that the goods were delivered to the carrier, and the failure to deliver them safely. These facts are *prima facie* evidence of negligence or misconduct. * * * The rules of the common law prescribing his duties and fixing his liabilities are intended for the protection of the public, and it would offend the public policy, in which these rules have their foundation, if they were not extended so as to embrace every species of property which becomes the subject of transportation by carriers. * * * These are rights attaching to every species of property he may assume to carry, and the corresponding duty and liability the law fixes on him should also attach. We prefer, therefore, to follow the authorities, which hold that, unless modified by special contract, 'the common law liability of a carrier for the delivery of live animals is the same as that for the delivery of merchandise. Upon undertaking their transportation he assumes the obligation to deliver them safely against all contingencies, except such as would excuse the nondelivery of other property.'" In *Lindsley v. Chicago, M.*

& St. P. R. Co., 36 Minn. 539, it is held, in an action for
the death of live stock in the course of transportation and
wholly under the care of the carrier, that the burden of
proof is upon the defendant to show that the cause of
the death was within the exceptions qualifying its gen-
eral liability. Under these authorities, which we think
correctly state the rule, the burden of proof rests upon
the appellant to show that the loss of the mule was due
to the inherent nature or propensities of the animal. The
cause of the loss is a matter to be determined by the jury
from the evidence. *South & North A. R. Co. v. Henlein
& Barr, supra.* Where the evidence shows that the ani-
mal was delivered to the carrier in good condition, and
its death occurs while in the carrier's custody during
transportation, these facts establish a *prima facie* case
against the carrier, and raise the presumption of negli--
gence on its part, and the burden rests upon it to free
itself from the implication of negligence. Any other rule
would place the shipper practically without any remedy
in case of loss or damage to live stock occasioned by the
negligence of the carrier. While the evidence offered
tends to prove that the mule may have died without any
fault on the part of the carrier, it is not of such a char-
acter as to necessarily require such a finding. For aught
that appears in the evidence, the death of the mule may
have been caused by lack of feed or water, or from over-
feeding, or from lack of care upon the part of the appel-
lant. Its death may also have been due to natural causes.
The evidence does not go to the extent of proving that
the death of the mule was not due to the negligence or
fault of the company, and we cannot say that the evi-
dence is not sufficient to sustain the verdict.

Appellant complains because the court refused to give
an instruction directing a verdict for the defendant. The
view heretofore expressed of the evidence is sufficient to
dispose of this question.

Complaint is also made of instruction No. 4, given by
the court upon its own motion, and of instruction No. 1,

given at the request of the plaintiff. Instruction No. 4 simply sets out the material allegations of the petition, which plaintiff was required to prove. Appellant criticises this instruction as permitting the jury to find a verdict for the plaintiff upon the proof of these facts alone, but such is not the case. It does not direct the jury to find a verdict upon the establishment of the facts therein contained, and was nothing more than pointing out to the jury the material facts in issue. Instruction No. 1, given at the request of the plaintiff, is in the following language: "You are instructed that, if you find by a preponderance of the evidence that the defendant company received the mule in question in good order at McCook, Nebraska, for shipment on through billing to Menominee Falls, Wisconsin, there to be delivered to the plaintiff, and that said defendant company failed to deliver said mule to the plaintiff at said city of Menominee Falls, Wisconsin, then you will find for the plaintiff, unless you further find by a preponderance of the evidence that the defendant's failure to deliver said mule to the plaintiff at said Menominee Falls, Wisconsin, was because of the death of said mule due to the act of God, or unavoidably resulting from the nature and propensity of an animal of that character." This instruction was a concise statement of the law applicable to the case, and properly placed the burden of proof upon the defendant to show that the loss was due to the act of God, or unavoidably resulted from the nature and propensities of the animal. It simply required the defendant to free itself from the presumption of negligence arising from the loss of the animal. We think the instruction was properly given.

Complaint is made because of alleged misconduct of counsel for the plaintiff in going outside of the record in his argument to the jury. The record discloses that counsel for plaintiff made statements in his argument to the jury which were not warranted by the record. But, when objections were made and a ruling requested, the

court promptly sustained the objections, and admonished counsel to keep within the record. In every instance where objections were made by appellant to the misstatements or misconduct, with a request for a ruling, such ruling was favorable to the appellant. The statements made and the misconduct complained of do not appear to have been of such a nature that any prejudice to the rights of appellant was not fully met and cured by the ruling and admonition of the court.

No prejudicial error appearing in the record, it is recommended that the judgment of the district court be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.