## Nashville, Chattanooga and St. Louis Railway Company v. Johnson.

[No. 8,320. Filed October 8, 1914. Mandate modified December 15, 1914. Rehearing denied October 15, 1915. Transfer denied January 7, 1916.]

1. CARRIERS.—*Carriage of Live Stock.*—*Negligence.*—*Pleading.*— In an action by a railroad company to recover freight charges for the transportation of a car of horses, an answer alleging that plaintiff in consideration of a promise to pay the sum claimed received the car of horses from defendant and undertook and agreed to carry them safely, that plaintiff negligently failed in the performance of the undertaking in that it negligently crowded the horses into a car too small in capacity, and negligently failed to supply them with bedding, whereby and by reason of which they were injured, etc., was not open to the objection that the injury was not traced to the negligence charged by any proper averments. p. 420.

2. CARRIERS.—*Carriage of Live Stock.*—*Negligence.*—*Pleading.*—In an action by a railroad company to recover freight charges for the transportation of a car of horses, defendant's counterclaim for

damages, alleging delivery to an initial carrier who received and loaded the horses into the car and undertook to deliver them safely at the place to which they were consigned, that said horses were transported and delivered by the initial carrier to another carrier who received and reloaded them and undertook to deliver them safely to the end of its line, and that the latter carrier delivered them to plaintiff who received them and undertook to carry and deliver them safely to defendant at the place to which they were consigned, and charging plaintiff and each of the carriers with negligence in loading the horses into a car of insufficient capacity, in failing to supply them with bedding, and in operating the car in a violent manner, whereby some of the horses were killed and others injured, to defendant's damage, was not open to the objection that it did not charge plaintiff with negligence in loading or transporting the horses. p. 421.

3. APPEAL.—*Review.—Harmless Error.—Ruling on Demurrers.*— Error, if any, in sustaining a demurrer to a paragraph of reply, and the demurrer to plaintiff's answer to defendant's counterclaim, was harmless, where the facts pleaded were in each case provable under the general denial. p. 422.

4. CARRIERS.—*Carriage of Live Stock.—Action.—Issues.—Instructions.*—In an action by a railroad company, which was the terminal carrier, to recover on a check given to it for the freight charges due on a shipment of horses, where defendant answered on the theory that plaintiff to the exclusion of the initial and connecting carriers negligently injured the horses in transporting them, whereby defendant suffered damages in excess of the amount of the check, an instruction stating that if defendant proved by a fair preponderance of the evidence "that the plaintiff or its connecting lines injured or damaged his horses more than the amount of such check", etc., was erroneous in that it predicated a defense in part on an injury that may have been inflicted by the other carriers, but the error was harmless in view of the fact that the evidence showed without contradiction that the horses were injured while in plaintiff's possession. pp. 423, 425.

5. CARRIERS.—*Carriage of Live Stock.—Connecting Carriers.— Negligence.—Presumptions.*—Where freight, including live stock, is received by the initial carrier in good condition, and is delivered by the terminal carrier in a damaged condition, the latter has the burden of showing that the freight was not injured while in its possession, and in the absence of such showing it will be presumed that the injury occurred on the line of the terminal carrier. p. 424.

6. CARRIERS.—*Carriage of Live Stock.—Connecting Carriers.— Negligence.—Liability of Terminal Carrier.*—Where live stock was taken from the car of the initial carrier and reloaded into a car of insufficient capacity by the connecting carrier, who delivered the

car without change in its condition to the terminal carrier, the latter by accepting the car and undertaking to transport the horses therein made such instrumentality its own, and could not avoid liability for injuries resulting from the condition of the car and not shown to have occurred on the line of the connecting carrier. p. 427.

7. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—Error in instructions which predicated liability against a terminal carrier for damage to a shipment of horses in part on injuries that may have been inflicted by the initial or connecting carriers, was harmless in view of evidence showing without contradiction that the horses were injured while in possession of the terminal carrier. p. 428.

8 CARRIERS.—*Carriage of Live Stock.*—*Negligence.*—*Liability.*— *Instructions.*—Barring certain exceptions resulting from an act of God, or of the public enemy, or arising from the negligence of the shipper or from the inherent nature of the goods shipped, the common-law liability of a carrier makes it an insurer of the safety of a shipment intrusted to it, in the absence of a contract limiting its liability; hence, in a carrier's action for freight charges due on a car of horses, where defendant filed a counterclaim declaring on plaintiff's common-law liability for damages by reason of injury to the horses in transportation, and there was nothing to show the application of any exception to the rule, an instruction that railroad companies are liable as common carriers and are insurers of the safe delivery of property entrusted to them for transportation and that they will not be excused for failure to make a safe delivery, was not erroneous. (*Cleveland, etc., R. Co.* v. *Rudy* [1909], 173 Ind. 181, distinguished.)  pp. 428, 430.

9. CARRIERS.—*Carriage of Freight.*—*Exemption from Common-Law Liability.*—*Burden of Proof.*—Where the property carried was committed exclusively to the carrier, and the carrier's common-law liability is relied on for injury thereto, the carrier has the burden of alleging and proving that the shipment was within an exception to such rule of liability.  p. 430.

10. APPEAL.—*Review.*—*Misconduct.*—*Surprise.*—*Variance.*—In an action by a terminal carrier to recover freight charges on a car of horses, where defendant filed a counterclaim for damages counting on plaintiff's common-law liability, and in which no reference was made to any special contract of shipment, the statement of defendant in response to a question from his counsel on cross-examination that the initial carrier gave him a way-bill or shipping contract, that the shipment was billed through to final destination, and that the way-bill or contract was at his home, did not constitute either misconduct, surprise, or variance that would entitle plaintiff to a new trial, in view of the fact that no such contract was introduced or offered in evidence, and that there was nothing to show that plaintiff was a party to such contract or in any way entitled to the benefit of any of its provisions.  p. 431.

11.  CARRIERS.—*Carriage of Live Stock.*—*Injuries.*—*Damages.*—In an action by a railroad company to recover freight charges for the transportation of a car of horses, in which defendant filed a counterclaim in two paragraphs, in the first praying damages in the sum of $1,200, and in the second declaring on the same transaction and alleging damages in the sum of $1,500 by reason of the injuries alleged and in the sum of $100 for expense in an effort to cure the horses, with prayer for judgment in the sum of $1,400, the amount that defendant could recover must be judged from the facts pleaded rather than from the prayer, so that, there being no evidence to sustain the alleged item of expenditure in an effort to cure the horses, the limit of recovery on such counterclaim was $1,500, less the sum of $433.20 which the uncontradicted evidence showed plaintiff entitled to recover; hence a verdict awarding defendant $1,200 was excessive.  p. 432.

12.  APPEAL. — *Review.* — *Evidence.* — *Verdict.* — Where defendant's counterclaim proceeded on the theory of damages to his horses while being transported by the plaintiff railroad company, and the evidence was directed to that end, without any evidence on the subject of damages to any other horses, the verdict is not open to the objection that it includes damages for the loss of two other horses.  p. 434.

13.  APPEAL.—*Briefs on Petition for Rehearing.*—*Consideration.*— Extracts of testimony set out in appellant's brief on petition for a rehearing, not set out or referred to in appellant's original brief, will not be considered.  p. 434.

From Johnson Circuit Court; *William E. Deupree,* Judge.

Action by the Nashville, Chattanooga and St. Louis Railway Company against Anthony Johnson. From the judgment rendered, the plaintiff appeals. *Affirmed.*

*William Featherngill,* for appellant.

*R. M. Miller, H. C. Barnett* and *Oral S. Barnett,* for appellee.

CALDWELL, J.—This action grew out of the shipment of a carload of horses by appellee from Collins, Montana, to Lebanon, Tennessee, over the respective lines of an initial, a connecting and a terminal carrier, appellant, whose line extends from Nashville to Lebanon, Tennessee, being such terminal car-

rier. On the arrival of the horses at Lebanon, appellee issued to appellant's agent, for freight charges on the carload of horses, a check, dated November 3, 1909, drawn on the Franklin National Bank of Franklin, Indiana, in the sum of $382.13. Soon after the execution of the check, appellee notified the bank not to pay it, whereby, on presentation, it went to protest for nonpayment.

Appellant's complaint is in two paragraphs. The first declares on the check and interest thereon, and protest expenses in the sum of $2.80; and the second paragraph declares on an account stated in the amount of the check. In addition to a general denial, appellee filed three paragraphs of special answer, numbered two, three and four, and two paragraphs of counterclaim numbered five and six. The action of the court in overruling the demurrer to each paragraph of special answer and each paragraph of counterclaim is properly presented. Paragraphs two and three are directed to the first paragraph of complaint. The second paragraph is a general answer of no consideration for the execution of the check; while by the third, the facts constituting the nonexistence of such consideration are more specifically pleaded. Each of said paragraphs is sufficient. The fourth paragraph of answer, which is directed to both paragraphs of the complaint alleges in substance that appellant, as a common carrier for hire, in consideration of the promise to pay the sum set out in said check, and involved in the account, received from appellee the carload of horses at St. Louis, Missouri, and undertook and agreed to carry them safely to Lebanon, Tennessee; that appellant negligently failed in the performance of the undertaking, in that appellant negligently crowded the horses into a car too small in capacity,

and negligently failed to supply them with bedding, whereby and by reason of which, the horses were injured as alleged in said paragraph of answer, to appellee's damage in the sum of $1,100. The sole objection urged to said paragraph is that appellant asserts the injury complained of is not traced to the negligence charged by any proper averments. It is specifically alleged in said paragraph that the horses suffered and received said injuries by reason of the negligence charged. It follows that appellant presents no error respecting the ruling on said paragraph.

Appellant's criticism of the first paragraph of counterclaim, numbered five, as aforesaid, is the same as that made to the fourth paragraph of answer, to wit, that no causal connection is shown between the negligence charged and the damages suffered. An inspection of said paragraph discloses that such criticism is unwarranted. As against the sufficiency of the second paragraph of counterclaim, numbered six, as aforesaid, appellant argues that "nowhere in said paragraph is appellant charged with any negligence in loading or transporting said carload of horses." Appellant misinterprets this paragraph also which charges in substance that appellee delivered the horses to the initial carrier who received and loaded them into the car, and undertook to carry them safely to Lebanon, Tennessee; that said carrier transported them to St. Louis, Missouri, and there delivered them to the Louisville and Nashville Railway Company, which company received and reloaded them and undertook to carry them safely to Nashville, Tennessee; that said company did carry them to that point, and there delivered them to appellant company, which company received them, and as a common carrier for hire, undertook to

carry them safely to Lebanon, Tennessee, and to deliver them safely to appellee. Facts are alleged charging appellant and each of the other carriers with negligence in loading the horses into a car insufficient in capacity, and in failing to supply them with bedding and in operating the car in a violent manner, and in thus transporting the horses, and that as a result, several horses were killed and others injured, to appellee's damage in the sum of $1,500; that appellee incurred expense in an effort to cure the injured horses in the sum of $100. Prayer for judgment for $1,400 and other proper relief.

Appellant filed a general denial to each paragraph of special answer, and also to each paragraph of counterclaim, and filed also a special reply to said fourth paragraph of answer, and a special answer to each paragraph of counterclaim. Error is predicated on the court's ruling in sustaining a demurrer to the special reply and also to said special answer. Said paragraph of reply alleges in substance that appellant received the car of horses at Nashville on October 20, 1909, at seven o'clock a. m. and transported them to Lebanon, arriving at nine o'clock a. m. That the horses were in a damaged condition when so received by appellant, and that none of the injuries were inflicted while the horses were on appellant's road from Nashville to Lebanon. Said special answer is to the same effect as said special reply, except that the former contains an additional averment that appellant did not reload the horses on receiving them at Nashville, but transported them to Lebanon in the Louisville and Nashville car. The error, if any, in sustaining the demurrer to said special reply, and also to said special answer was harmless, for the reason that the facts therein pleaded were admissible under the general denial in each case pleaded thereto.

Preparatory to a consideration of the questions presented on the overruling of the motion for a new trial, we proceed to determine certain preliminary matters, among them the nature and extent of the issue. As indicated, appellant, by its first paragraph of complaint, sued to recover on a check given for freight charges, and by its second paragraph to recover on an account stated, growing out of the same transaction as that in which the check originated. Under the evidence the latter cause of action was merged into the former. Appellant, by undisputed evidence, made its case on the issue presented on the first paragraph of complaint, and the general denial thereto, and a *prima facie* case as against the special answers filed to said paragraph of complaint. There was no evidence to sustain the defense of want of consideration pleaded by the second and third paragraphs of answer. The theory of the fourth paragraph of answer is to the effect that appellant, to the exclusion of the initial and connecting carriers, in transporting the horses, negligently injured them, whereby appellee suffered damages in excess of the amount of the check. It is not alleged in said paragraph of answer that there existed any sort of a joint arrangement to which the initial and connecting carriers and appellant as terminal carrier were parties, whereby it might be said that appellant is liable for damages occasioned by any breach of duty on the part of both or either of the others. The charge is that appellant received the horses and that appellant injured them, as alleged. It is, therefore, unnecessary for us to determine the circumstances under which there might be such joint liability, or a liability on the part of appellant for an injury growing out of the act of one or both of said other carriers. It follows that in order that appellee might establish

his defense as pleaded in the fourth paragraph of answer, it was incumbent on him to prove the injuries as pleaded inflicted by appellant rather than the other carriers. This brings us to a consideration of instruction No. 11 given by the court on its own motion.

By this instruction, the court in proper terms explained to the jury the facts necessary to be proved by appellant to make its case on the complaint. The instruction then proceeds thus: "If defendant has proven by a fair preponderance of the evidence * * * that the plaintiff or its connecting lines injured or damaged his horses more than the amount of such check, then he has proven such paragraph of his answer as alleges such facts proven." It is evident from what we have said that the giving of this instruction was error. It predicates a defense in part on an injury that may have been inflicted by both or one of the other carriers. It remains to be seen, however, whether such error was harmful. If the evidence, aided by presumptions which the law indulges, shows that the injuries were inflicted while the horses were in appellant's possession, occasioned by appellant's fault, and there was no evidence to show that either of the other carriers had part in the inflicting of such injuries, then the error in giving such instruction was harmless, as it could not reasonably be presumed that the jury charged appellant with an injury done by the other carriers when there was no evidence that they inflicted any injury.

With practical uniformity, courts recognize the rule that where freight, including live stock, is received by the initial carrier in good condition, and is

5. delivered by the terminal carrier in a damaged condition, the presumption arises, the contrary not appearing, that such freight was delivered

to such terminal carrier in the same condition as when received by the initial carrier, by reason of which presumption the burden is cast on such terminal carrier to show that the freight was not injured while in its possession. The rule is stated in substance as follows: Where freight has been transported by successive carriers, and is damaged *en route*, and the evidence fails to show on what particular line the injury occurred, it will be presumed that it occurred on the line of the last carrier. 4 Elliott, Railroads (2d ed.) §1450; *Cleveland, etc., R. Co.* v. *Schaefer* (1910), 47 Ind. App. 371, 381, 90 N. E. 502; *Martin* v. *Kansas, etc., R. Co.* (1911), 139 S. W. (Tex. Civ. App.) 615; *Texas Pac. R. Co.* v. *Adams* (1890), 78 Tex. 372, 14 S. W. 666, 22 Am. St. 56; 6 Cyc 490, 491; *Atlantic, etc., R. Co.* v. *Riverside Mills* (1907), 31 L. R. A. (N. S.) 102, note.

The evidence showed, without conflict, that the horses were in good condition when delivered to the initial carrier, and that they were thereupon

4. loaded into a car of sufficient capacity, and with proper bedding to carry them safely. There was evidence that after they had been transported to the vicinity of East St. Paul, Minnesota, like conditions existed. At St. Louis, Missouri, the horses were reloaded by the Louisville and Nashville Railway Company into a shorter and narrower car, which car containing the horses, was delivered to appellant by said company at Nashville, Tennessee, in which car appellant carried them to their destination. There was no evidence as to the condition of the horses or as to the sufficiency of their bedding after they left East St. Paul. The uncontradicted evidence showed that when the car reached its destination at Lebanon, Tennessee, many of the horses were seriously injured, several

were down in the car under the feet of the others; that the car floor was so slick that the horses were unable to stand securely, and that there was no bedding. Appellant's witnesses, on the controverted points, testified by deposition. Several of its employes so testified to having examined the car at Nashville, but gave no testimony respecting the condition of the horses, or the presence or absence of bedding. One such witness in the employ of the Louisville and Nashville Terminal Company testified that it was a part of his duty to report on stock down in cars. He examined this load shortly after it was delivered to appellant, but gave no evidence as to whether any of the horses were injured or were down in the car. Appellant's conductor examined the load at Nashville, by looking through the cracks in the car, but testified that he was unable to ascertain the condition of the horses. This witness made the general statement that the horses received no injuries while the car containing them was in appellant's train. Aside from the fact that this statement does not necessarily cover the entire period of time within which the car was in appellant's possession, it is evident that such statement was the conclusion of the witness from the facts to which he testified, to the effect that the trip that morning was ordinarily smooth. The negligence charged in said paragraph of answer is that the car was insufficient in capacity and that bedding was not supplied. It does not charge that the car was negligently handled. Giving force to the presumption, as above indicated, the evidence showed without contradiction that the horses received their injuries while in appellant's possession. There was, therefore, no harmful error in giving instruction No. 11.

But the car in which the horses were carried over appellant's line was furnished by the Louisville and

Nashville Railway Company, and there was
6.  no evidence that appellant made any change
in it or in its condition.   From this fact, it
might be argued that if injury resulted from the in-
sufficient capacity of the car or the absence of bed-
ding therein, said Louisville and Nashville Railway
Company, rather than appellant, should be held re-
sponsible therefor.   Conceding that said company
did furnish the car, and that there was insufficient
bedding, there was no evidence that any injury re-
sulted therefrom on the line of that company, and
hence no action could have been maintained against
that company for anything that occurred on its
line.   Moreover, appellant was under no compulsion
to transport the horses in a car of insufficient capac-
ity and defective equipment.   By accepting the
car, and undertaking to transport the horses therein,
appellant made such instrumentality its own.   Its
responsibility flowing therefrom is exactly the same
as if it had furnished the car on its own motion, and
failed to supply it with bedding.   We would not be
understood as holding that from the fact that ap-
pellant adopted such instrumentality, as aforesaid,
the Louisville and Nashville Railway Company
would be relieved from liability for an injury in-
flicted beyond its own line, and on appellant's line
based on the furnishing of a defective equipment, to
be used in carrying the horses to their destination, if
such be the case.   We hold simply that the mere fact
that the equipment was furnished by another com-
pany does not relieve appellant from liability.
2 Hutchinson, Carriers (3d ed.) §500; *St. Louis, etc.,
R. Co.* v. *Carlisle* (1904), 34 Tex. Civ. App. 268,
78 S. W. 553; *Wallingford* v. *Columbia, etc., R. Co.*
(1886), 26 S. C. 258, 2 S. E. 19; *Shea* v. *Chicago, etc.,
R. Co.* (1896), 66 Minn. 102, 68 N. W. 608; *Texas*

*Cent. R. Co.* v. *O'Loughlin* (1905), 37 Tex. Civ. App. 640, 84 S. W. 1104.

The infirmity, which we have pointed out, in instruction No. 11 exists also in instructions Nos. 12, 14, 16, 17 and 19. However, for reasons assigned in the discussion of instruction No. 11, the error in giving each of the others was harmless.

Complaint is made of instruction No. 13, which is as follows: "Railroad companies are common carriers, and are liable as such. They are insurers of the safe delivery of the property entrusted to them for transportation, and they will not be excused for a failure to make a safe delivery." The relation of this instruction to the issue joined on the paragraphs of counterclaim renders its consideration important, the scope and extent of which issue we proceed to determine. As indicated, the second paragraph of counterclaim charged in substance that appellant, as a common carrier for hire, received the horses at Nashville, and undertook to carry them safely and deliver them to appellee at Lebanon; that appellant failed to perform the duty thus assumed in that appellant negligently provided an improper car in which it transported the horses, and negligently failed to supply them with bedding, and negligently operated the train containing the car, and that as a result, the horses were injured as alleged. The first paragraph of counterclaim is similar to the second, one distinction being the charge in the former that the horses were received at St. Louis, Missouri, instead of Nashville, Tennessee. Said paragraphs of counterclaim tendered to appellant an issue of common-law liability, which was closed by general denial. On the subject of such common-law liability, it is said: "A common carrier of goods, in the absence of a con-

tract limiting his liability, *is an insurer*, and, as such, bound absolutely and at all events safely to transport and deliver the shipment to the consignee or shipper at the point of destination. Under this rigorous rule of liability, the question of negligence is not considered. This doctrine has always as *exceptions* losses by a ct of God and the public enemy, to which from time to time have been added losses through the shipper's own neglect, losses caused by the inherent nature of the object of the shipment, and losses occasioned by seizure under valid court process." 5 Thompson, Negligence §6451. See, also, 4 Elliott, Railroads (2d. ed.) §1481. It thus appears that while common carriers of property are insurers, in the absence of a contract limiting their liability, they are such insurers only in a qualified sense. Thus, they are not insurers against injury resulting from the act of God or a public enemy, or from the inherent nature of the thing carried, etc., nor, in the absence of negligence on their part, are they liable for damages resulting therefrom. Thus, they are not insurers that fruits carried will not decay, or that liquids will not evaporate, or that animals carried will not inflict injuries on themselves or their fellows, through their natural disposition to be frightened, or to crowd, kick, hook, etc., nor, in the absence of negligence, are they liable for damages resulting therefrom. Subject to such limitations or exceptions, common carriers, in the absence of a contract as aforesaid, are insurers of the property carried by them. *Swiney* v. *American Express Co.* (1909), 144 Iowa 342, 115 N. W. 212, 122 N. W. 957; *Missouri Pac. R. Co.* v. *Harris* (1886), 67 Tex. 166, 2 S. W. 574; *Church* v. *Chicago, etc., R. Co.* (1908), 81 Neb. 615, 116 N. W. 520; *Coupland* v. *Housatonic R. Co.* (1892), 61 Conn. 531, 23 Atl. 870, 15 L. R. A. 534; 5 Thompson, Negligence §6471; ·

*Cleveland, etc., R. Co.* v. *Schaefer, supra; Stiles* v. *Louisville, etc., R. Co.* (1909), 18 L. R. A. (N. S.) 86, note.

We have thus ascertained that said counterclaim declares on appellant's common-law liability. We have ascertained also that there are certain well defined exceptions to the doctrine that common carriers of property are insurers. Proceeding with our discussion, it is a salutary rule, where as here the property carried is committed exclusively to the custody of the carrier, that the burden is on the carrier to allege and prove the existence of any such exception. *Cleveland, etc., R. Co.* v. *Schaefer, supra; Church* v. *Chicago, etc., R. Co., supra; Chicago, etc., R. Co.* v. *Slattery* (1906), 76 Neb. 721, 107 N. W. 1045, 124 Am. St. 825; *South, etc., R. Co.* v. *Henlein* (1875), 52 Ala. 606, 23 Am. Rep. 578; *Cooper* v. *Raleigh, etc., R. Co.* (1899), 110 Ga. 659, 36 S. E. 240; *McCoy* v. *Keokuk, etc., R. Co.* (1876), 44 Iowa 424; 5 Thompson, Negligence §6454; *Stiles* v. *Louisville, etc., R. Co., supra,* 93, note. In the case at bar there was nothing tending to show the existence of any such exception, and no claim to that effect was made.

Under such circumstances, there was no harmful error in the giving of instruction No. 13, as applied to this case, and especially when taken in connection with instruction No. 19, which advised the jury in substance that in measuring the damages it should exclude from consideration any injury or damage to the horses that would result from the mere fact of so long a trip by rail. An instruction somewhat similar to instruction No. 13 was condemned in *Cleveland, etc., R. Co.* v. *Rudy* (1909), 173 Ind. 181, 89 N. E. 951. In that case, the counterclaim alleged that the shipper by contract agreed to care for the animals in transit and at his own risk. It also

showed on its face that a portion of the damages for which the shipper sought to recover grew out of injuries resulting from the natural propensities of the animals.

Other instructions are criticized, but appellant has called our attention to no substantial error in them. Perhaps it is well for us to say that appellant in its "Points and Authorities", as set out in its brief, has directed no proposition specifically to instructions given. Under such circumstances, we would be warranted in declining to consider instructions given.

Among the causes for a new trial, appellant assigns misconduct of appellee, and surprise which ordinary prudence could not have guarded against. These assignments are based on the following facts: Appellee's counterclaim makes no reference to any special contract for the transportation of the horses. In each of the paragraphs, the allegation was general to the effect that appellant accepted the horses and undertook to carry them safely to their destination. On his cross-examination as a witness, appellee in response to questions asked him by appellant's counsel, stated that the initial carrier gave him what he designated as a waybill or shipping contract for the transportation of the horses, and that the car was billed from Montana to Lebanon, Tennessee, and that the waybill or contract was at his home in Franklin, Indiana, being the place of trial. The misconduct charged against appellee, and the excusable surprise which appellant claims resulted therefrom are based on the fact that appellee did not declare on such contract in his counterclaim, he having knowledge of its existence. If there was such a contract, it was not introduced or offered in evidence, nor was the court otherwise informed respecting its provisions. There was nothing to show that appellant was a party to

any such contract, or that it was entitled to avail itself of its terms, or that it was valid. There was nothing to show that appellant received or transported the horses under any such contract, or that it made any effort to cause it to be produced for the inspection of the court. In our judgment, both the indicated grounds for a new trial are untenable and likewise the claim that there is a fatal variance between allegation and proof.

Appellant contends that the verdict is excessive, and with this contention we agree. It is evident that the transaction declared on in the first paragraph of counterclaim is the same as that declared on in the second. The allegations of the former show damages in the sum of $1,200, for which sum judgment is prayed. The latter shows damages by reason of injuries to the horses in the sum of $1,500, and on account of expenses incurred in an effort to cure the horses, in the sum of $100, with prayer for judgment in the sum of $1,400. The amount that appellee may be entitled to recover must be determined from the facts pleaded, rather than the prayer. 1 Works' Practice §911; *Kettry* v. *Thumma* (1893), 9 Ind. App. 498, 36 N. E. 919. The limit of recovery then under the counterclaim is $1,600. There was no evidence to sustain the second item of damages pleaded, and thus the limit of recovery is reduced to $1,500. Appellant's first paragraph of complaint was established by uncontradicted evidence. Moreover, the facts necessary to a recovery on such a paragraph were practically conceded. On such paragraph, appellant was entitled to recover the amount of the check, with interest to the time of the trial, and the protest expenses in addition, or $433.20 in all. The jury, evidently under the court's instruction to that effect, returned a verdict in appellee's favor for the

difference between the damages found on the counterclaim, and the amount due appellant on the complaint. Under the allegations of the counterclaim, the amount of the verdict should not have exceeded the difference between $1,500 and $433.20, or $1,066.80. Verdict in the sum of $1,200 is therefore excessive to the amount of $133.20. Such error may be corrected, however, by a remittitur. *Fairbanks* v. *Warrum* (1914), 56 Ind. App. 337, 104 N. E. 983. It is, therefore, ordered that if within twenty days, appellee shall file in this court a remittitur in the sum of $133.20, to be effective as of the date of the judgment below, the judgment will be affirmed for the residue in the sum of $1,066.80; otherwise, the judgment will be reversed, with instructions to sustain the motion for a new trial; in either case, costs against the appellee.

*Per Curiam.*—Since the decision of this case by this court, and within the time fixed in the opinion handed down October 9, 1914, conditionally affirming the judgment of the lower court, it has been made to appear to the satisfaction of this court that the condition on which said judgment was to be affirmed, to wit, that appellee should file in this court a remittitur in the sum of $133.20, to be effective as of the date of the judgment below, has been fully complied with. It is, therefore, ordered that the mandate heretofore made and entered by this court in said cause be, and it is hereby modified in that the judgment of the court below in the sum of $1,066.80 is now unconditionally affirmed, with the costs against appellee.

ON PETITION FOR REHEARING.

CALDWELL, J.—In its petition for rehearing, appellant urges three points: (1) that appellant can be held liable in this action only for damages caused by it; (2) that the evidence showed that forty-six horses

were received by the initial carrier, and that only forty-four of them were delivered to appellant and that appellant ought not to be held liable for the loss of the two; (3) that there was evidence that at least some of the injuries suffered by the horses transported by appellant were inflicted before they were delivered to appellant.

As to the first point, the holding in the original opinion is expressly in harmony with appellant's contention. As to the second point, the pleadings properly construed proceed on the theory of damages to the horses transported by appellant, and the evidence was directed to that end. There was no evidence offered on the subject of damage to any other horses than those transported by appellant. Under such circumstances, it can scarcely be presumed that the verdict includes any sum for damages on account of the loss of the other two. In discussing the third point, appellant includes in its brief in support of the petition for rehearing certain alleged extracts from the testimony of appellee to the effect that the appearance of the wounds and bruises upon the bodies of the horses indicated that they may have been inflicted from six hours to two days before the horses were delivered by appellant at Lebanon. Neither this evidence nor its substance is set out or referred to in appellant's original brief. Under such circumstances, we are not authorized to consider it.

In certain particulars not referred to in the petition for a rehearing, we have modified the opinion as originally handed down, the result, however, not being changed. The opinion as modified will stand as the opinion of the court, and the petition for rehearing is overruled.

NOTE.—Reported in 106 N. E. 414, 1087; 109 N. E. 912. As to carriers of live stock as common carriers, see 63 Am. St. 548. On the

burden of proof as to injury to live stock during transportation, see 17 L. R. A. 339. On the question of the liability for loss or damage to live stock shipments due to initial carrier's own negligence or breach of contract, see 31 L. R. A. (N. S.) 81. As to whether a carrier is an insurer of live stock transported by it, see 18 L. R. A. (N. S.) 86. As to the liability of a carrier of live stock for injury to the same, see 1 Ann. Cas. 158. As to presumption as to which of several connecting carriers is liable for injuries to goods carried, see 3 Ann. Cas. 584. See, also, under (1) 6 Cyc 515; (3) 31 Cyc 358; (4) 38 Cyc 1809; (5) 6 Cyc 490; (6) 6 Cyc 487; (8) 6 Cyc 376; (9) 6 Cyc 519; (11) 6 Cyc 531; (13) 3 Cyc 214.